22 N.J. Super. 204 (1952)
91 A.2d 646
WILLIAM C. CLOSTERMAN, ET AL., PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF CRANFORD, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS-RESPONDENTS, AND THE H.A. WILSON COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided October 16, 1952.
*206 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Walter E. Cooper argued the cause for the appellants.
Mr. Carl H. Warsinski argued the cause for the respondents Township of Cranford and Township Committee of Cranford.
Mr. C. Allan Phillips argued the cause for the respondent Osceola Homes, Inc. (Messrs. Whiting, Moore & Phillips, attorneys; Mr. Roswell S. Nichols, Jr., of counsel).
The opinion of the court was delivered by SMALLEY, J.S.C. (temporarily assigned).
This is a zoning case. Plaintiffs contest the validity of an ordinance passed in the Township of Cranford on April 10, 1951 amending its zoning ordinance as to a specific parcel of property whereby the area was rezoned from Residence "A" District to Industrial District. They appeal from a judgment of the Superior Court, Union County, affirming the action of the defendant township.
The questions they present are:
Firstly, did the amending ordinance conform with the statutory procedural requirements in view of the fact that:
(a) there is conflicting testimony regarding the length of one of the boundary lines, whether it is 1,911.80 feet or actually 1,191.80 feet, which conflict was not resolved by the court below; and
(b) the description of the rezoned property, both in the advertisement of the ordinance and in the ordinance, was indefinite, and, in any event, not sufficiently clear to protect the rights of parties interested under R.S. 40:55-35; and
*207 (c) the date when the ordinance was adopted on first reading was stated in the advertisement thereof as March 27, 1951, whereas such first adoption took place on February 13, 1951.
Secondly, was the enactment of the said ordinance the result of arbitrary, capricious and unreasonable action on the part of the township committee?
Thirdly, the court below erred in its affirmance of the validity of the above-described ordinance.
A similar ordinance was passed on December 29, 1950 but apparently it was conceded by the defendants that this ordinance was invalid and the ordinance of April 10, 1951 was introduced and passed to eliminate certain technical defects encountered at the time that the first ordinance was passed on December 29, 1950.
The lands in question have been in a Residence "A" District since the year 1922 and are still vacant. The tract is bounded on the west and south by vacant lands owned by the Union County Park Commission. It is bounded on the east by what appears to be a sparsely built area which is zoned in Residence "B" (two-family zone). It is bounded on the north by the Lehigh Valley Railroad, its tracks running along this boundary for a distance of approximately 1,900 feet.
The record indicates that this tract of some 34 acres was the remaining portion of a farm of some 312 acres owned for many years by the Sperry family and that for the last 20 years the owners have endeavored without success to sell or develop the land for residential purposes.
It appears that all of the industry of the Township of Cranford is located abutting railroad property. It further appears that the land owned by the Union County Park Commission abutting the property which is the subject of this dispute, has never been developed into improved park property, is in its natural state and has been held by the Commission for a considerable number of years. It is to be noted that the Union County Park Commission at the time *208 of the passage of the ordinance neither indicated its objection or approval of the proposed ordinance.
There were real estate experts on each side giving contradictory evidence as to the best use of the premises. It would appear that in the passage of the ordinance the township committee was confronted by a substantial number of taxpayers and citizens who were not in agreement as to the course to be adopted by the defendant township.
As to the first reasons given for setting aside the amending zoning ordinance, we think they are without merit. We find no proofs submitted that the rezoned area is not properly and adequately described. Assuming that there is some inaccuracy in the length of a course, the monumenting of that course prevails since the property or street lines may constitute monuments and, as such, control the courses. Hofer v. Carino, 4 N.J. 244 (1950).
We think that the parties interested were thoroughly aware of the provisions of the ordinance as introduced and we do not find that the plaintiffs have established that there was any error in the described area.
As to the contention that the ordinance under review is invalid because the proposed notice dated March 27, 1951 of the ordinance to be passed April 10, 1951 stated that the ordinance was adopted on the first reading on March 27, 1951, when it was actually adopted on first reading on February 13, 1951, is also without merit.
R.S. 40:55-34 provides:
"No zoning ordinance shall be adopted, amended, or repealed until after public hearing thereon by the governing body or board of public works, at which parties in interest and citizens shall have an opportunity to be heard. Said ordinance and notice of the time and place of hearing thereon shall be published at least once in an official newspaper, if there be one, or otherwise in a newspaper of general circulation in the municipality, and such publication shall take place ten or more days prior to such hearing."
The amending ordinance and the time and place of hearing thereon was published in full compliance with the requirements *209 of this section. Stirling v. City of Plainfield, 136 N.J.L. 38, 41 (E. & A. 1947). The mere fact that the municipality also included in the notice of public hearing, a statement that the published ordinance passed on first reading on March 27, 1951, rather than on February 13, 1951, does not invalidate the whole publication.
The purpose of this notice was to give the citizens and taxpayers notice of a consideration and final passage of the ordinance. It gave notice that interested persons would be heard. There is no evidence that any interested persons including the objectors to the final passage had no opportunity to be heard. To the contrary, they appeared in substantial numbers, some with counsel and were, in fact, heard.
Plaintiffs' real objection, as we see it, is that the ordinance is the result of the unreasonable action on the part of the township committee when it rezoned the lands in question and placed them in an industrial area, whereas the lands had formerly been classified as Residence "A."
We need not discuss the background of zoning legislation or the elementary proposition that municipalities may enact or amend zoning ordinances. It is also fundamental that the burden of proving that such an ordinance is unreasonable rests upon the asserting party.
R.S. 40:55-32 provides:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
We are impressed with the testimony that the land is bounded on the north for a distance of approximately 1,900 *210 feet by the Lehigh Valley Railroad; on the south and west by vacant lands held for many years by the Union County Park Commission, which land still remains in its natural state.
We must and do give consideration to the considerable effort that has been expended to develop the land for residential purposes. These efforts have resulted in nothing. The loaning agencies could not obtain F.H.A. commitments on mortgages because of the location of the land, and this situation has existed during the entire period when there has been a recognized housing shortage.
One expert testified that the lands by reason of their location should never in the first instance have been classified in an "A" Residential Zone. Notwithstanding that such testimony was adduced below, appellants seek to have this court determine that the action of the township in placing the lands in an industrial zone is unreasonable.
Plaintiffs contend that the township having orginally put the lands in a residential zone may not now reclassify the area unless substantial changes have taken place and cite Appley v. Bernards Township, 128 N.J.L. 195 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942).
We think that where a tract of land such as this, standing vacant since at least 1922, the date of the enactment of the original zoning ordinance in the Township of Cranford, with uncontradicted proofs that because of its location no residences have been erected, is proof that it is so classified as to say that it has no use whatever and that any residential classification retained by the municipality would indeed be unreasonable.
Here we find the planning board of the defendant township approving after study the reclassification of these lands. Here now is taken a realistic view by the defendant township of the pertinent portion of R.S. 40:55-32: "* * * Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of *211 conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
Accepting the testimony that the lands are vacant and have remained so notwithstanding the earnest effort to sell and develop for residential purposes, and considering the fact that a busy railroad has its tracks and right of way abutting the lands for some 1,900 feet, it is understandable that necessary mortgage money for the building of homes is not available simply because the location is not adaptable to residential purposes. Faced with these undisputed facts can it be successfully argued that for all time this land must lie vacant? We are not unmindful of the principle laid down in Rexon v. Borough of Haddonfield, 10 N.J. 1 (1952) where the court said:
"A zoning ordinance does not contravene constitutional limitations merely because the restricted use may not be the most profitable use to which the property can be devoted."
Here, however, we find that no use has been made of the lands for at least 30 years because of its classification under the zoning ordinance and bounded as it is by abutting properties which make the land undesirable for dwelling and homes. Rezoning under such circumstances is desirable and to be expected, provided it is based on comprehensive plans, study and statutory requirements. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952).
It has been argued that because two committeemen who first came to their office in the year 1951, when voting for the ordinance now under review, expressed at the meeting some thought that they were passing the matter over to the court for determination and accordingly did not rely upon their own judgment when voting to enact the amending ordinance. We find nothing to substantiate such a view. It will be remembered that the original ordinance was passed in 1950 and that there were found to be certain technical defects in its passage. This first ordinance was also subject to a suit grounded in the same general theory as the one *212 now before us. With such a background it does not seem unusual that there might be some discussion of possible court action. Plaintiffs, however, have not carried the burden of establishing that this mere comment affected the members of the township committee in their vote to enact the amending ordinance on the merits.
We recognize, of course, that in such matters there is often a sharp difference of opinion as to whether such action should or should not be taken by the municipality. Some citizens will favor, others will resist any such rezoning. A governing body when confronted with such a situation must come to a conclusion. Its determination here we think valid. Courts do not impose their substituted judgment for that of a governing body where, as here, there appears evidence that justifies the action of the governing body.
Affirmed.