32 N.J. Super. 397 (1954)
108 A.2d 498
WALTER H. JONES AND ALICE HENSHAW JONES, PLAINTIFFS-APPELLANTS,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF LONG BEACH, THE BOARD OF COMMISSIONERS OF THE TOWNSHIP OF LONG BEACH, JULIA EDNA FRAZIER, CLAUDE W. TAYLOR, EDNA M. TAYLOR, S. ROBERT LASLOCKY, AMELIA A. LASLOCKY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1954.
Decided October 14, 1954.
*399 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Irving C. Evers argued the cause for the plaintiffs-appellants (Mr. Walter H. Jones, attorney).
Mr. Henry H. Wiley argued the cause for the defendants-respondents, The Zoning Board of Adjustment of the Township of Long Beach, and the Board of Commissioners of the Township of Long Beach (Messrs. Berry, Whitson & Berry, attorneys).
Mr. Louis B. LeDuc argued the cause for the defendants-respondents S. Robert Laslocky and Amelia A. Laslocky.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
Our inquiry is directed to ascertaining whether in the light of the purposes of the Zoning Act, the action of the Township of Long Beach in rezoning a certain portion of a residential zone known as the "Loveladies" section of the township into a business zone represents sound judgment based on the policy of the statute "to advance the common good and welfare" or whether it was arbitrary and unreasonable, thereby constituting "spot zoning," merely furthering purely private interests.
The respondents, Laslockys, contend that the appellants are guilty of laches "* * * and further that by their failure to protest a supposed invasion of their rights, thereby inducing the continued investment of money by defendants *400 in the construction of the milk bar and its subsequent operation, they have estopped themselves from claiming the relief sought." However, our determination of the question hereinabove posed, makes it unnecessary for us to consider the issues of laches and estoppel.
The plaintiffs, owners of a parcel of unimproved ground opposite the business zone, instituted their action in the Law Division to set aside the amendment to the zoning ordinance as constituting spot zoning, as effectuating a variance by bypassing the township zoning board of adjustment and charging that the amended ordinance was, therefore, arbitrary, capricious, unreasonable, contrary to law and void.
The trial court held, 28 N.J. Super. 483, that by reason of their delay in the institution of the action, the plaintiffs were not entitled to the relief sought, on the grounds of laches and estoppel. The trial court made no determination with respect to the plaintiffs' contention that the ordinance was invalid.
Long Beach Township, in Ocean County, is situate on Long Beach Island which is a rather long, narrow island, extending from Barnegat Inlet to Beach Haven Inlet, bounded on the east by the Atlantic Ocean and on the west by Barnegat Bay. The township has an unusual situation in that it is composed of six separate sections, each of which is separated from the next by another municipality. Each section has its own name or designation and the one with which this appeal is primarily concerned is the "Loveladies" section, consisting of approximately 1,000 acres in a natural or semi-wild state, about two miles in length, and is bounded on the north by the Borough of Barnegat Light and on the south by the Borough of Harvey Cedars. The only section that does not presently have a business zone is North Beach, between the Borough of Surf City and Harvey Cedars, approximately one mile long.
The original township zoning ordinance did not provide for a business district in the "Loveladies" area. Reaching the conclusion that provision should be made for a business district in that section, the township committee adopted an *401 amendment on May 19, 1950, providing therefor. The business zone created by the amendment consisted of 1,250 feet in length facing on the northwesterly side of Long Beach Boulevard with a depth perpendicular thereto of 400 feet, comprising a total of 11.2 acres. The street on which the business zone faces, known as Long Beach Boulevard, is 100 feet in width and for practical purposes is the only business artery on the island. The Laslockys commenced the construction of a milk bar in the business zone subsequent to the adoption of the amendment. It was completed in August 1950.
At the time of the adoption of the amendment there were only 34 homes in this entire "Loveladies" area and there were no homes within a half-mile of the business zone. There was testimony that the governing body of the township had been considering the zoning problem for about two years before the adoption of the amendment and decided that a business zone should be made for the "Loveladies" section before any more homes were built. In connection with its consideration of the proposed amendment, the governing body discussed it with the civic organization of the "Loveladies" section and the attorney and president thereof indicated its approval and, at the time of the adoption, no one voiced any objection thereto. The record discloses that subsequent to the adoption of the ordinance and up to the date of the trial on October 8, 1953, 31 additional homes had been built; that since 1950 there has been more development than all that preceded that date; that it was anticipated there may be 200 more homes by the summer of 1954, and that this section of the township has a potential of about 800 homes.
In the Borough of Barnegat Light, which is between a mile and a half and two miles north of the center of the "Loveladies" section, there is a business district, consisting of a community grocery store, bars and a service station. The business district in Harvey Cedars is largely undeveloped, being a mile and four-tenths to a mile and eight-tenths from the center of the "Loveladies" area, and consists of a general store, post office, service station, bars and liquor stores.
*402 The plaintiff, Walter H. Jones, testified that the commercial facilities in Barnegat Light were quite ample for the owners in that area; that the area had been developed simply and strictly for those people who wanted to maintain the natural beauty and at the same time put up a residential accommodation of a high type; that he had seen the area grow and the area itself being residential, was not being served by the activity of the Laslocky milk bar, serving only transient travel; that the entire district is so set up in its present physical use that the residents use cars almost constantly throughout the island; that within a half-mile walking distance of the Laslocky installation there were only 30 residents at that time; that the natural beauty and so-called wild state of the "Loveladies" section was always intended to and should be preserved and limited strictly to residential uses; that his property was littered with wrappings from items sold from the Laslocky establishment; that milk trucks operate from the Laslocky property, and at night the milk bar is lit up creating a different effect than would a residence in the area.
The plaintiffs' expert, Mr. Herbert Smith, testified that 90% of the area in which the plaintiffs' property is located is in its natural state, pointing out that there was no planning board in the township and further, that "The characteristics of the area made quite an impression upon me in my observation"; that the area is "unequivocally primarily residential"; that the expert was "also impressed by a comparative openness of the residential development compared to the other parts of the Island, where over-crowding had been permitted to occur"; that there was a great change in the vegetation in that as the development occurs vegetation is destroyed, and there remains a desirable growth of vegetation that cannot be replaced once it is destroyed; that there was a change in characteristics of homes, the quality of homes, which occurs all over the Island, and "ties into the theory behind planning that crowding together leads to a smaller type of house that is less attractive and less economically sound to the municipality, and in this particular *403 section the houses were larger, were spread out and of more substantial structure in general."
The basic consideration of zoning is set forth in R.S. 40:55-32, as follows:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
Under the foregoing statutory provision the exercise of local zoning power is not absolute and unlimited, but is conditioned upon its adherence to the statutory purposes and considerations to be served thereby. Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250 (1951). It should be in accordance with a comprehensive plan designed to promote statutory purposes relating to the health, safety and welfare of the community, and be made with "reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses," and with a view of conserving the value of property and encouraging the most appropriate use of land "throughout the municipality." Speakman v. Mayor and Council of Borough of North Plainfield, supra. In zoning, lands in a like situation should be classified alike. Arbitrary discrimination is not permissible, and the action taken must be grounded in reason and judgment based upon the policy of the statute. Appley v. Township Committee of Township of Bernards, 128 N.J.L. 195, 199 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942).
The appellants strongly rely upon the recent decision of our Supreme Court, in Borough of Cresskill v. Borough of Dumont, 15 N.J. 238 (1954), and argue that it is apposite to the case sub judice and, therefore, clearly controlling here.
*404 In the Cresskill case, Chief Justice Vanderbilt discussed quite comprehensively the controlling principles and purposes of the Zoning Act and clearly defined the meaning of "spot zoning," holding that where indulged in, it must be repudiated and rejected as contrary to the spirit and purpose of a comprehensive zoning plan. However, the Cresskill case is distinguishable from the matter presently before us, in that the amendment which was set aside, rezoned a single block 787 feet by 195 feet from a residential area to a business zone. We are convinced that the determining factor is not merely the size of the lot that determines the issue, but rather the size of the rezoned area in comparison with the size of other zone areas within the municipality as represented by the zoning plan. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952).
In the present case, we must bear in mind the long, narrow shape of the island and the plan of the governing body to create a business zone that would conform thereto, providing sufficient area to accommodate the business requirements not only of the existing home owners, but future home owners in that section of the Township; that Long Beach Township is peculiarly situate in that it is separated into the aforementioned six sections and that the proofs indicate that the business accommodations provided by the Boroughs of Barnegat Light and Harvey Cedars are not too near the residents of Long Beach Township and would appear to be inadequate as well to properly serve the increasing demands of home owners of Long Beach Township.
The charge of illegal "spot zoning," levelled at the creation of the business zone, is without substance. Defined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners, "spot zoning" is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not "spot zoning." Borough of Cresskill v. Borough of Dumont, supra; Rodgers v. Village of Tarrytown, 302 N.Y. *405 115, 96 N.E.2d 731 (Ct. App. 1951); Crow v. Town of Westfield, 136 N.J.L. 363 (Sup. Ct. 1948); Hendlin v. Fairmount Construction Co., 8 N.J. Super. 310 (Ch. Div. 1950); Speakman v. Mayor and Council of Borough of North Plainfield, supra; Schmidt v. Board of Adjustment of City of Newark, supra.
On the contrary, the township contends that the amendment to the ordinance cannot, under any circumstances, be construed as "spot zoning," arguing that there are no decisions or statute which prevent the governing body from amending its zoning ordinance to provide a business zone in an undeveloped residential area in order to meet the changes that occur therein and other parts of the township; that, in fact, R.S. 40:55-35 contemplates the changing of boundaries of zoning districts as the public good requires and that such a change may be objectionable only if it does constitute "spot zoning."
Stability and regularity are undoubtedly essential to the operation of zoning plans, but zoning is by no means static. Changed or changing conditions call for changed plans, and persons owning property in a particular zone or use district are not possessed with a vested right to that classification, if the public interest demands otherwise. The power of a municipality to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. The decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination is presumed to be reasonable and valid, will be conclusive, beyond interference from the courts, unless shown to be arbitrary, unreasonable or capricious. The burden of rebutting this presumption and establishing such arbitrariness is imposed upon him who asserts it. Rodgers v. Village of Tarrytown, supra; Lionshead Lake, Inc., v. Township of Wayne, 10 N.J. 165, 172 (1952); Baris Lumber Co., Inc., v. Town of Secaucus, 20 N.J. Super. 586, 590 (Law Div. 1952); Rockleigh Borough *406 v. Astral Industries, Inc., 29 N.J. Super. 154, 164 (App. Div. 1953).
Appellants argue further that the township had no planning board, consequently, a comprehensive zoning plan never evolved. However, it must be borne in mind that it is not mandatory for the township to create a planning board. The governing body may, as here, assume the duties and responsibilities of a planning board and there is proof here that consideration was given to a comprehensive plan and the creation of the business zone in the "Loveladies" section as a part thereof.
Viewing the rezoning in the case before us, as it must be viewed, in the light of the area involved and the present and reasonably foreseeable needs of the community, the conclusion is inescapable that what was done not only accorded with sound zoning principles, not only complied with every requirement of law, but was accomplished in a proper, careful and reasonable manner.
The judgment is affirmed, without costs.