61 N.J. Super. 312 (1960)
160 A.2d 635
S & L ASSOCIATES, INC., PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF WASHINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, HAROLD UMSTADTER AND PHILIP C. SCOTT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1959.
Decided May 9, 1960.
*317 Before Judges GOLDMANN, CONFORD and FREUND.
*318 Mr. William M. Feinberg argued the cause for appellant (Messrs. Feinberg, Dee & Feinberg, attorneys).
Mr. Ralph Porzio argued the cause for respondents (Messrs. Shubach & Orr, attorneys for Washington Township; Messrs. Jeffers, Mountain & Franklin, attorneys for respondents Umstadter and Scott; Mr. Porzio on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a Law Division judgment dismissing its complaint in lieu of prerogative writs contesting the validity of defendant township's 1957 zoning ordinance and a 1958 amendment thereto. It contended that the ordinances were not drawn in accordance with a comprehensive plan; they did not comport with the purposes of zoning as set out in R.S. 40:55-32; they constituted "spot zoning," in violation of the design and purpose of the Zoning Act; and they were the result of personal favoritism, collusion and discrimination by municipal officials not acting in the best interests of the community's health, safety, welfare and morals. Plaintiff further contended that the ordinances should be set aside because tainted with the self-interest of the officials who participated in their preparation and adoption. Central to the attack on the validity of the local legislation is the inclusion in the industrial zone of lands owned by defendants Scott and Umstadter, and the exclusion therefrom of plaintiff's tract.

I.
Washington Township is a rural, sparsely settled community in Morris County, comprising some 2,600 persons living in an area of 45 square miles. In 1954 the township, as yet unzoned, decided to adopt zoning, and to that end established a planning board to study the matter and make recommendations. The 1957 zoning ordinance reflected *319 almost three years' work by the board, assisted by county planning authorities and Dr. Edward B. Wilkens, Professor of Planning and Director of Planning Services at Rutgers University, and some of his students.
Faced with an increasing tax burden, apparently as a result of a decline in its agricultural economy, the township committee concluded that the solution of its fiscal problems lay in attracting industry. Accordingly, it also established an unofficial advisory body known as the Industrial Development Commission, to develop and execute plans for bringing industry to the township and to advise the governing body as to how this might best be done. One of the members of this commission was defendant Umstadter, whose land, together with the adjacent land of defendant Scott, was ultimately designated as one of the industrial zones.
There were five small "industries" in the township when the planning board initiated its study, and these included a creamery, a junkyard, and a fertilizer plant. The last mentioned was located on Scott's land, but was no longer in use at the time the ordinance was adopted. The apparent plan of the board was to locate these preexisting uses in industrial zones and, having in mind sites that would draw industry to the township, to seek offers from owners of large tracts who were willing to have their lands similarly zoned. Among those who came forward with offers were one Guerin, who soon after became a member of the planning board; defendants Scott and Umstadter, who offered a combined acreage of 1,000 acres upon solicitation by the board; and plaintiff, which had purchased a 132-acre tract in the northeastern area of the township in October 1956. Immediately after acquiring that tract plaintiff requested subdivision approval from the board, submitting plats and building plans. Although approval was granted, plaintiff did nothing pursuant thereto.
At a meeting held April 11, 1957 the planning board tentatively voted to zone 250 acres of the Scott-Umstadter property for industry. Actually, all this acreage belonged *320 to Scott. Two weeks later it similarly voted to place all of plaintiff's tract in an industrial zone. Somewhat smaller tracts owned by Guerin, by then a planning board member, and one Hemmings, another member, were industrially zoned. Hemmings' property, which was adjacent to an industrial zone in Chester Township to the east, already had a commercial use thereon.
With the zoning ordinance apparently ready for final drafting, the planning board scheduled public hearings on May 8 and 15, 1957. More than 200 residents attended, constituting about 10% of the township population and, obviously, a greater percentage of its adult population. Since there were relatively few residences in the area of plaintiff's tract, located in the so-called Naughright section of the township, many of those present at the hearings must have come from other areas of the municipality. The single serious objection to the zoning plan was the industrial zoning of plaintiff's property. The principal basis for this objection was that the Naughright section was beginning to take on the character of a high quality residential area, neighborhood values would depreciate, and the natural beauty of the countryside be seriously impaired were industry permitted on plaintiff's lands. After reconsidering the zoning plan in the light of these objections, the planning board removed plaintiff's tract from the industrial zones and re-zoned it for residential use. The zoning ordinance, as revised, was submitted to the township committee and ultimately adopted on June 27, 1957.
It appears there were no industries interested in locating in the township at the time the ordinance was passed. Sometime thereafter Umstadter, apparently in his capacity as a member of the Industrial Commission, received an offer from Fairlawn Industrial Park, Inc., to develop the Scott-Umstadter industrial zone as the Morris County Industrial Campus. However, the developer desired a larger site. It therefore wrote the planning board requesting that the area be enlarged. The matter was considered by the board *321 at its meeting of February 27, 1958, at which time it was voted to enlarge the Scott-Umstadter industrial center from 250 to about 600 acres. The board also considered letters received from plaintiff requesting that its land be considered for an industrial zone, and decided to hold them for later consideration in connection with the preparation of a township master plan. At its meeting of April 24, 1958 the board took up plaintiff's request for approval of its tract for industrial use and, after lengthy discussion and hearing the protests of more than 25 residents of the Naughright section, unanimously voted to reject the application. It also voted to recommend formally to the township committee that the Scott-Umstadter industrial zone be enlarged. On June 17, 1958 the governing body adopted an amendment to the zoning ordinance creating the 600-acre industrial tract.
There are about a dozen homes, most of them new, in the immediate vicinity of plaintiff's land in the Naughright section. A freight railroad line bisects the property for a distance of some 2,000 feet, and there are high tension lines on the tract. It is bounded by roads on two sides, by woods and a ravine on the third, and by a branch of the Raritan River on the fourth. Most of the tract is swampy, and at least half cannot be used for either industrial or residential development. Soil drainage is quite poor, and in most places below the minimum requirements for septic tanks that would be required for residential properties. Both plaintiff's expert Sussna, a planning and zoning consultant, and respondents' expert Wilkens, agreed that plaintiff's tract was not particularly appropriate for residential development. Wilkens was of the opinion that despite the railroad, river and high tension line features emphasized by Sussna, the property was not especially attractive for industrial use either.
The Scott-Umstadter tract is located near the center of the township, close to the most developed section known as Long Valley, and east of Middle Valley Road, one of the main township arteries. The freight line already mentioned *322 runs parallel to and west of this road. Fronting on the road is a church and the township's only grammar school, the industrial tract being about one-eighth mile from the rear lines of these properties. The township envisions a planned recreation area at this location which will serve as a buffer zone. A second line of the property is parallel to and about a quarter-mile from another main artery, Fairmount Road. Drainage is superior to that of plaintiff's tract. There are no high tension lines, but these can readily be supplied. Scattered residences, including those belonging to Scott and Umstadter, are separated from the industrial zone by several acres which serve as a buffer. The tract is apparently suitable for both residential and industrial use.
The Guerin tract of about 60 acres is located some distance to the south of Scott-Umstadter. Hemmings' property, as noted, adjoins Chester Township along the northeastern boundary of the municipality.

II.
One who attacks a zoning ordinance as arbitrary or unreasonable has the burden of clearly showing that this is so. In the absence of proof possessing such quality, this court will not interfere with the policy determination of the municipal body. Kozesnik v. Montgomery Township, 24 N.J. 154, 167 (1957). Moreover, if the issue of conformity with the requirements of the Zoning Act is fairly debatable, the local legislative judgment prevails and our duty is to affirm it. Bartlett v. Middletown Township, 51 N.J. Super. 239, 259-261 (App. Div. 1958), certification denied 28 N.J. 37 (1958); Ward v. Montgomery Township, 28 N.J. 529, 539 (1959).
As we said in Jones v. Long Beach Zoning Board of Adjustment, 32 N.J. Super. 397, 405 (App. Div. 1954):
"* * * The decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and *323 determination is presumed to be reasonable and valid, will be conclusive, beyond interference from the courts, unless shown to be arbitrary, unreasonable or capricious. The burden of rebutting this presumption and establishing such arbitrariness is imposed upon him who asserts it. [citations omitted]"
And see Bartlett v. Middletown Township, above, 51 N.J. Super., at page 261; Lionshead Lake, Inc. v. Wayne Township, 10 N.J. 165, 172 and 179 (1952).
Plaintiff argues that the inclusion of the Scott-Umstadter property and the exclusion of its tract from the industrial zones were incorrect  the former should have been excluded and its lands included. But zoning regulations, as was said in Cobble Close Farm v. Middletown Board of Adjustment, 10 N.J. 442, 452-3 (1952), are not to be formulated or applied with a design to encourage the most appropriate use of plaintiff's property, but rather "with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." (Emphasis by the court) And it is not sufficient for a plaintiff to show that it would be more profitable for him to use his property in a manner enjoined by the ordinance. He must show an abuse of discretion resulting in an unreasonable exercise of the zoning power. The essential question is whether it is clearly demonstrated that the ordinance classification has no real and substantial relation to one or more of the zoning considerations specified in R.S. 40:55-32. Clary v. Eatontown, 41 N.J. Super. 47, 65 (App. Div. 1956).
There is a definite lack of proof that the zoning ordinance under consideration was clearly arbitrary and unreasonable. On the contrary, there is sufficient evidence indicating the reasonableness of the township's action.
We share the considered opinion of the Law Division judge that the township officials made a sincere and conscientious effort to zone the municipality properly. The zoning ordinance *324 was obviously the result of extended study and discussion. It was developed with professional assistance, a factor usually considered as strongly supporting the conclusion of a valid attempt to accomplish a comprehensive planning purpose. See, for example, Ward v. Montgomery Township, above, 28 N.J., at page 533; Kozesnik v. Montgomery Township, above, 24 N.J., at page 179.
The fact that the industrial zoning was motivated by a desire for increased revenues does not militate against the validity of the ordinance. Such a consideration in municipal planning and zoning is clearly proper. The situations in Kozesnik (Hillsboro Township, with 54.7 square miles and 4,594 population) and in Ward (Montgomery Township, with 31.8 square miles and 3,900 population), involving rural agricultural communities with heavy tax burdens, are quite comparable. Municipal action to accomplish tax relief by measures similar to the one taken here was sustained.
Contrary to plaintiff's contention, we conclude that the Washington Township zoning ordinance was in accordance with a comprehensive plan and met the essential considerations set out in R.S. 40:55-32. The municipality rationally attempted to zone land use in the public interest and for the public benefit, and cannot be said to have done so without giving reasonable consideration to the character of the district and the peculiar suitability of property for a particular use, and with a view to conserving land values and encouraging the most appropriate use of land.
As the experts testified, industrial development can be scattered throughout a municipality on smaller tracts or concentrated on a larger one. Either method has its own advantages. The township was free to determine which type of development would best suit its purposes. Since there was no immediate industrial prospect, the actual amount of industrial land needed was speculative. As the testimony of the township officials showed, what was especially needed was one large parcel for attracting an industrial park, obviously a most desirable type of industrial development. *325 There can be no criticism of such objective. Because of the township's sparse settlement there were probably a number of theoretically suitable tracts. It would be a distinct hardship (so it was testified) for a property owner to have his land zoned industrially, since such zoning would preclude all other uses. The actual coming of industry was not immediately foreseeable. We therefore perceive no objection to the township's having sought acquiescence for industrial zoning from those property owners who had appropriate tracts and were willing to offer them for the planning board and governing body's consideration, so long as there was no collusion or favoritism.
As noted, the only ones who accepted the invitation to offer lands for industrial use were Scott, Umstadter, Guerin, Hemmings and plaintiff. That the township officials finally decided not to include all the tracts in zoning for industry cannot, in the circumstances, serve as a valid ground of objection. If, in the exercise of a judgment honestly and fairly arrived at and based on legitimate considerations, the Scott-Umstadter tract was deemed more appropriate than plaintiff's as the one that would attract an industrial park, that judgment has to be sustained.
It is clear from the record that the Scott-Umstadter tract was physically appropriate for industrial zoning. It is large and undeveloped  flat land with good drainage and water supply, located at the township crossroads and accessible to a freight line. The presence of industry there would result in minimum detriment to real estate values. The proximity of the school and church on Middle Valley Road would at first seem to weigh against industrial zoning of the tract. However, the testimony concerning the planned recreational buffer, the advantages to the school and church because of increased municipal facilities, and the different time schedules kept by the school and industry, largely neutralize all apparent disadvantages of the Scott-Umstadter tract. Although the presence of industry will eventually draw increased traffic to the area, this alone does not defeat the industrial *326 zoning of the tract. The testimony indicated that the children do not walk to school but are usually transported there in buses or private cars.
In any event, the choice of the Scott-Umstadter tract as appropriate for industrial use presents, at the very least, a fairly debatable issue, so that its classification as an industrial zone should not be disturbed. Plaintiff's tract is not clearly more appropriate. The decision to exclude it can be justified both by the municipal decision to conserve the Naughright section property values and by the fact that while it may be less suited to residential use than Scott-Umstadter, it is likewise less suited to industrial use. To compel its inclusion would clearly frustrate the legitimate plan for attracting industry by forcing the township to offer a less attractive site. Furthermore, plaintiff's site is no more compatible with preexisting uses than is defendants'. Cf. Closterman v. Cranford Township, 22 N.J. Super. 204 (App. Div. 1952).

III.
Plaintiff argues that the decision to zone its property for residential rather than industrial use was improper because based upon the sentiments and desires of neighboring landowners, citing in support Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938). In the first place, the claim is not factually accurate. There are about two dozen homes in the neighborhood of plaintiff's lands, but more than 200 persons voiced their objections. Only a few of these could have been "neighbors."
Secondly, Mansfield & Swett is not apposite. The subdivision plan there in question met all of the planning board's requirements, and the only reason it was disapproved was because of neighbors' objections. In the case before us there is no evidence that the planning board felt compelled to accede to the objections made. Moreover, as we read Mansfield & Swett, a municipal zoning decision may conform to public objection where that objection relates, not to the *327 special benefit of the objectors alone, but to the public interest in general. Ibid., 120 N.J.L., at pages 159-160. The general public desire to conserve realty values in a prime residential area like the Naughright section is a legitimate consideration, since any depreciation of realty values in such an area may well affect the whole community.
Yanow v. Seven Oaks Park, Inc., 18 N.J. Super. 411 (Ch. Div. 1952), reversed in part on other grounds, 11 N.J. 341 (1953), on which plaintiff also relies, is similarly distinguishable. The court there set aside a zoning ordinance which prohibited private schools, clubs, lodges, social community centers and recreation buildings "unless the written consents of 80 per cent., by frontage, of the owners of all lots within 200 feet of the property in question" were first filed with the building inspector. The court held the ordinance invalid as an attempted delegation to property owners of a legislative power vested in the municipality.

IV.
Plaintiff next contends that the amendatory ordinance enlarging the Scott-Umstadter tract from 250 to 600 acres was illegal because (1) there were no changed conditions warranting the action, and (2) it constituted "spot zoning." There is no validity to the argument.
Plaintiff cites Appley v. Bernards Tp., 128 N.J.L. 195 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942), for the proposition that before a zoning ordinance may legally be amended there must be a change of conditions warranting reclassification. We do not read that case as holding that only where there is a change in conditions may a zoning ordinance be amended. As in the case of the original ordinance, the validity of an amendment is tested by the criterion of its reasonable adherence to the statutory purposes of zoning. A change in conditions is merely prima facie evidence that a zoning amendment is warranted.
*328 That there was a sufficient economic change to warrant an amendment is clear from the record. The Fairlawn group required a much larger area for its industrial program and would be interested in coming to Washington Township only if there were an expanded area. Compare the situation in Ward v. Montgomery Township, above, 28 N.J. 529. The extension undoubtedly served the interests of Fairlawn, but its primary purpose was to serve the community by insuring the receipt of increased tax revenues which a flourishing industrial park would produce. Cf. Kozesnik v. Montgomery Township, above, 24 N.J., at page 173.
Equally without merit is the argument that the enlargement of the industrial Scott-Umstadter zone was "spot zoning." "Spot zoning" has been defined as "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." Jones v. Long Beach Tp. Zoning Bd. of Adjustment, 32 N.J. Super. 397, 404 (App. Div. 1954). It is the very antithesis of planned zoning. On the other hand, where an ordinance is enacted in accordance with a comprehensive plan, there is no spot zoning. Bartlett v. Middletown Township, above, 51 N.J. Super., at page 270.
We hold that the extension was neither irrational nor inharmonious with the comprehensive plan expressed in the original ordinance. The amendment did not classify the 350 additional acres into a category "totally different from that of the surrounding area," since they were contiguous to the 250 acres already classified as industrial. It did not create a small island of incompatible use. The only one complaining is plaintiff, whose lands are far removed; there is no showing that the amendment worked to the "detriment of other owners." And, as appears from Kozesnik, above, 24 N.J., at page 173, it is not objectionable in a rural area like this to extend the boundary of an industrial zone into land which is of essentially the same character if the *329 intention is to further the welfare of the entire municipality as part of a comprehensive plan.

V.
Plaintiff's final point is that the ordinance and its amendment should be set aside because tainted with the self-interest of the officials who participated in their preparation and adoption, with the result that they could not discharge their duties in a completely impartial manner.
A public officer has the duty of serving the public with undivided loyalty, uninfluenced in his official actions by any private interest or motive whatsoever. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-5 (1952), certiorari denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652, rehearing denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952). As we said in Aldom v. Roseland, 42 N.J. Super. 495, at pages 502, 503 and 507 (1956), the interest which disqualifies need not be a direct, pecuniary one: it may be indirect. Basically, the question is whether the public official, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes, to the prejudice of those for whom the law authorizes him to act. The validity of his action does not rest upon proof of fraud, dishonesty, loss to the municipality, or whether he was in fact influenced by his personal interest. We take note, also, of the prohibition contained in the Municipal Planning Act, N.J.S.A. 40:55-1.4: "No member of the planning board shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest."
In this connection, see, generally, Note, "The Doctrine of Conflicting Interests Applied to Municipal Officials in New Jersey," 12 Rutg. L. Rev. 582 (1958); see also Hochberg v. Freehold, 40 N.J. Super. 276 (App. Div. 1956), certification denied 22 N.J. 223 (1956), and Zell v. Roseland, 42 N.J. Super. 75 (App. Div. 1956). But cf. Wilson v. Long Branch, 27 N.J. 360 (1958), certiorari denied 358 *330 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958), where our Supreme Court refused to upset resolutions of the governing body and planning board declaring a certain area to be blighted. The chairman of the planning board was the president, a director and stockholder of a bank holding mortgages on property in the area; another member was a director and stockholder of the same bank; a third was municipal health officer and resided some 300 feet from the blighted area. The court held their interests "so remote and contingent as not to warrant disqualification."
The most recent case dealing with the question under discussion is Van Itallie v. Franklin Lakes, 28 N.J. 258 (1958), involving an attack upon two zoning ordinances because two councilmen had allegedly conflicting interests. In holding these too remote to call for disqualification the court said:
"Local governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official. If this were so, it would discourage capable men and women from holding public office. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. But in doing so they must also be mindful that to abrogate a municipal action at the suggestion that some remote and nebulous interest is present, would be to unjustifiably deprive a municipality in many important instances of the services of its duly elected or appointed officials. The determinations of municipal officials should not be approached with a general feeling of suspicion, for as Justice Holmes has said, `Universal distrust creates universal incompetency.' Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 151, 58 L.Ed. 319, 324 (1913); see also Ward v. Scott (II), 16 N.J. 16 (1954). * * *" (at page 269)
The decision whether a specific interest is sufficient to disqualify a public official is necessarily a factual one, depending upon the circumstances of the particular case.
In passing upon plaintiff's claim of conflict of interest the Law Division judge took into account the very limited population of the township, remarking that "where a small group of persons in a small municipality undertakes *331 to achieve anything as broad in scope as a zoning ordinance, it is inevitable that there will be some conflict of interest in the sense that they would have some personal interest which would be affected by the ordinance, and that is all I see here." He found that the officials involved had acted fairly and without venality, so that there was no ground for plaintiff's charge of self-interest. This would support a finding that there was no fraud or collusion, and would also seem dispositive of the claim that the township committee and the planning board showed favoritism toward Umstadter, who was on the Industrial Development Commission.
That commission, as we have noted, is a purely advisory, unofficial body, whose purpose is to encourage industrial settlement and to propagandize the township's advantages. It did not propose any of the legislation in question. Commission member Umstadter, who would appear to be the prime target of plaintiff's charge of self-interest, is not a township official. He had no part in the actions taken by the planning board or governing body. Such personal interest as he might have is therefore without significance in the present setting.
The question remains whether the interests of the township officials under attack fit the test laid down in our cases. Those officials are Spencer, Guerin and Hemmings, of the planning board; Harrison, the township engineer; and Andrews, one of the three members of the township committee.
Spencer was on the planning board until December 1957, when he resigned. In May 1958, a year after plaintiff's tract was denied classification as industrial, Spencer, representing a group who desired to purchase plaintiff's tract, offered it a price higher than it had paid. We perceive no conflicting private interest on his part. There is nothing in the record indicating any interest in that tract, or for that matter in any other, by Spencer while still a planning board member.
*332 The charge leveled against Harrison, the township engineer, is that he prepared a map for the Fairlawn group. The claim of private interest is baseless. The map was prepared at the request of the township and paid for by it. All Harrison was called on to do was to delineate the boundaries of the Scott-Umstadter tract. The map was approved by the planning board. Harrison had no apparent interest in Fairlawn's activities and was not paid by it.
Andrews, of the township committee, was an officer and stockholder in the Hager Water Co., as was Umstadter. The company supplied potable water to that part of the township which, it would appear from the testimony, lies east of Middle Valley Road and Route 24, which respectively lead southwest and east away from the central, developed Long Valley section. Its 2" pipe runs southward along Middle Valley Road to the church property mentioned above, passing to the west of the Scott-Umstadter industrial zone. Andrews voted for both the original zoning ordinance and the amendatory ordinance. Plaintiff argues that it is not too much to assume that had its tract been zoned for industry, it would compete with the Scott-Umstadter tract and might well affect the water revenues received by Hager Water Co. From this it spells out a self-interest on the part of Andrews which vitiated his participation as one of the three township committeemen in the adoption of the ordinances.
We find the argument entirely too tenuous. There is an available water supply on that portion of Umstadter's land which lies within the enlarged Scott-Umstadter industrial zone. Umstadter has a relatively new pump house and equipment on his remaining premises close by. A 10" main feeds into two 8" lines. Altogether, Umstadter has two miles of water pipe. One 8" main goes directly south into the industrial zone. Presently Umstadter can pump 1,200,000 gallons a day. There is a place on his lands that would permit of the storage of water through damming. The water system is now used for irrigation, but Umstadter *333 testified that if industry came to the Scott-Umstadter tract, it could be supplied by water from his pumping station, permission first having been obtained from the Public Utility Commission.
In light of this available water supply, the possibility of Hager Water Co. furnishing water to plants that might come to the industrial park is very problematical. Since it already supplies residences and farms in what we have described as the eastern section of the township, a new supply of water would have to be obtained. New and larger lines would have to be installed. State agency permission would have to be obtained. Most important, and before any of these steps were undertaken, industries would have to locate on the Scott-Umstadter tract and contracts entered into with them to supply industrial water. Accordingly, we find Andrews' interest entirely too remote and contingent to affect the validity of the ordinances.
In considering whether the participation of Guerin and Hemmings in the proceedings leading to the ordinance under attack invalidated it, a distinction should be drawn between the decision to place their own properties in the industrial zone and the decision to exclude plaintiff's tract therefrom. If only the former were implicated, a conclusion to condemn the ordinance on grounds of self-interest would be questionable. It is to be emphasized that original zoning was being effectuated. Of necessity, this involved giving every parcel of property in the municipality a zoning status it never had before. On principle, it makes no difference whether the new status was residential or industrial. In either case, new restrictions were placed on the theretofore free and untrammeled right of the owners to use the property for any lawful purpose. Since presumably all or most planning board members in municipalities of the general size and character of Washington Township own property therein, a general rule disqualifying owners from participating in an act of original zoning would not seem to be practicable or desirable. Of course, even in that context, *334 a special situation might, in a particular factual setting, denote a conflict of interest in the zoning treatment of the land of a planning board member. In the present case Guerin and Hemmings merely offered to make their properties available for industrial zoning. There is no presumption that this was necessarily favorable treatment of such property, it appearing that those who volunteered land for industrial purposes were few in number.
We therefore need not decide whether, without more, the placement of the Guerin and Hemmings properties in the industrial zone would of itself have been fatal to the ordinance on grounds of conflict of interest. However, insofar as the exclusion of plaintiff's property from the industrial zone is concerned, we conclude that their participation did involve invidious self-interest, calling for disqualification of the resulting official action. Once it was officially decided that the Guerin and Hemmings parcels were to be zoned industrial, those individuals had a natural economic stake in the exclusion of a tract like plaintiff's from that category. That tract, with its freight railroad, high tension lines, roads and river, was of a size fairly comparable to those of Guerin and Hemmings, and obviously competitive. The Scott-Umstadter tract could not reasonably be considered competitive; it was in a class by itself  the only property suitable for the industrial park which the township so much desired in order to attract substantial industry.
The number of tracts eventually zoned industrial were relatively few. Consequently, owners like Guerin and Hemmings had a competitive interest in restricting the number of tracts similar to theirs which might be so classified, and therefore an appreciable self-interest in the exclusion of plaintiff's property therefrom. The matter of their actual good faith becomes immaterial in such circumstances. The crucial question is merely one of the existence of a potential conflicting interest in the matter being debated and decided, *335 to an extent which can be considered more than remote or contingent. Such, we think, was the case here.
Although Guerin was not a member of the planning board when he offered his tract for consideration as an industrial zone, he, together with Hemmings, was a member when the board voted to exclude plaintiff's property from the industrial zone. (Hemmings was present at the meeting which voted the exclusion, but Guerin was not.) Both participated in the discussions and action taken by the planning board in rejecting plaintiff's application to have its tract approved for industrial use. This was enough to bring their activity within the proscribed sphere established by the Aldom case. It is of little moment that there were sufficient votes, apart from their own, to have effected these results. Aldom v. Roseland, above, 42 N.J. Super., at page 507; Pyatt v. Mayor, etc., of Dunellen, 9 N.J. 548, 557 (1952), where it was said that "The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable."
We conclude that since the participation of Guerin and Hemmings in the action of the planning board affected or may have affected the recommendation of that body in a material respect, the recommendation must be set aside. There being absent the statutory prerequisite of planning board recommendation for the zoning action of the governing body, Hasbrouck Heights Hospital Ass'n v. Hasbrouck Heights, 15 N.J. 447 (1954), the ordinance and its amendment must be set aside. Upon any future new consideration of a zoning ordinance by the planning board, Guerin and Hemmings should refrain from participation in its deliberations or recommendation.
Reversed.