212 N.J. Super. 69 (1986)
514 A.2d 45
CHARLES J. RIGGS AND VIRGINIA RIGGS, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF LONG BEACH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1984.
Decided November 1, 1984.
Reargued May 27, 1986.
Decided July 16, 1986.
*70 Before Judges MICHELS and PETRELLA.
Granville D. Magee argued the cause for appellant (Magee and Graham, attorneys; Granville D. Magee, of counsel; Granville D. Magee and Philip G. Pagano, on the brief).
Steven F. Nemeth argued the cause for respondents (Grossman & Kruttschnitt, attorneys; Ann K. Haskell, of counsel and on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
*71 Defendant Township of Long Beach (Township) appealed from a judgment of the Law Division entered in favor of plaintiffs Charles J. Riggs and Virginia Riggs declaring Township Ordinance No. 81-1C invalid and of no effect. The trial court held that the ordinance was "undebatably unreasonable and arbitrary and hence void as unconstitutional." We reversed the judgment of the trial court because we held to the view that the more recently enacted Township ordinance, Ordinance No. 83-9C, rendered the issue as to the initial ordinance moot. We also held that plaintiffs' claim was barred because they had failed to exhaust their administrative remedies in not seeking a variance from the terms of the ordinance. Accordingly, we remanded the matter to the trial court with directions that it remand the matter to the local level for consideration of plaintiffs' application for a variance to subdivide their property. The Supreme Court, finding that "Ordinance No. 83-9C did not change the substance of the prior Ordinance No. 81-1C in any way whatsoever," reversed the judgment of this court and remanded the matter to us for reconsideration. Riggs v. Long Beach Tp., 101 N.J. 515 (1986).
Although the background of this matter is set forth in the Supreme Court's opinion, a brief recitation of some of the pertinent facts is necessary to an understanding of our decision. In 1979 the Planning Board of defendant Township adopted a Master Plan and Land Use Plan Element. Pursuant to the Master Plan and Land Use Plan Element, the Township adopted a zoning ordinance in 1979. A subsequent amendment to that ordinance, No. 81-1C, adopted on January 2, 1982, rezoned a portion of land in the Brant Beach section of the Township that included property owned by plaintiffs. Because of procedural defects in Ordinance No. 81-1C, a new ordinance, No. 83-9C, was passed to correct the procedural defects of the prior ordinance. "The two ordinances, in fact, are verbatim duplicates of one another, differing only in designation and in *72 citation form to the revised General Ordinances." Riggs v. Long Beach Tp., supra, 101 N.J. at 520.
The Brant Beach area described in both ordinances consisted of 11 lots fronting on the bay. The lots were all undeveloped, with the exception of a Township recreation area. In 1976 the Township held a referendum. The public voted in favor of acquiring this area with Green Acres funds for public use. The Township undertook to acquire these lots for use as a park and recreation facility and, at the time of the adoption of Ordinance No. 81-1C, the Township had either purchased the other 10 lots or had executed a contract for their purchase.[1]
Prior to 1978 this described property was zoned R-50, a designation corresponding to a "General Residential Zone." The 1978 Master Plan and Land Use Plan Element designated this property as "Public Open Space," but the 1979 zoning ordinance again zoned the described tract R-50, the highest density residential zone. In 1982 the amendatory ordinance, No. 81-1C (now Ordinance No. 83-9C) rezoned plaintiffs' property from R-50 to R-10. Ordinance No. 83-9C was subsequently enacted to correct the procedural defects in Ordinance No. 81-1C and thus replaced the latter ordinance.
The impact of the ordinance was to reduce the permissible subdivision of plaintiffs' property from four building lots to two, in accordance with the R-10 designation. In an area zoned *73 R-10 the permissible uses include single family detached dwellings, churches, schools, museums and libraries, public utilities structures (but not including storage and maintenance uses and garages), professional offices and municipal recreational facilities and grounds. An R-50 designation permits all uses permitted in R-10 districts and, in addition, two family dwellings, buildings used exclusively for public purposes by a governmental body and storage and maintenance facilities. In R-10 districts no building can be erected on a lot less than 10,000 square feet in area. With the exception of ocean front property, the zoning ordinance requires lots in an R-10 district to have a minimum width and minimum depth of 75 feet. In R-50 districts, residential lots are required to have a minimum lot area of only 5,000 square feet and a minimum width of 50 feet.[2]
Prior to the amendatory ordinance, plaintiffs had sought to subdivide the property into four lots and to construct a house on one of them. In late 1977, plaintiffs had applied to the Township building inspector for a permit to construct the house and had had an engineer prepare a plot plan to subdivide the property. Plaintiffs were unable to obtain the necessary approval and in December of 1977 received a letter from the *74 Township's attorney apprising them that the Township intended to acquire their property. The letter stated that the Township would have an appraisal made within 30 days for the purpose of negotiating the purchase of the property, but informed plaintiffs that if the Township could not acquire the property through "amicable negotiations" it would be taken by eminent domain. The letter further stated that "[i]n the interim period, no further subdivision nor building will be permitted on your lands."
The property was appraised in September, 1978 at $234,500. However, the Township made no offer to purchase the property at that time, nor did it begin condemnation proceedings. The Township subsequently offered plaintiffs $234,500 to purchase the property. Negotiations followed, and plaintiffs had the property reappraised in 1980 by the same appraisers who had performed the earlier 1978 appraisal. These appraisals set the market value of the property as of September, 1980 at $400,000. The appraisals were made of the highest and best use of the property, determined by each appraiser to be a subdivision of the property into four residential bayfront properties of approximately 9,200 square feet.[3] Although the Township's attorney prepared contracts for the sale of the property, plaintiffs refused to execute an agreement to sell the property. On cross-examination plaintiff Charles J. Riggs indicated that during the course of the negotiations, at the time the second appraisals were secured, he and the Township discussed a purchase price of approximately $234,000 cash, together with a $160,000 donation by plaintiffs to the Township in exchange for tax benefits. Finally, in November 1980 plaintiffs, through their attorney, advised the Township that under no circumstances would they sell the property to the Township.
In December, 1980, shortly after plaintiffs had informed the Township that they would not sell the property, the Township *75 instituted an action in the Chancery Division seeking specific performance of an alleged agreement for the sale of the property. The Township also sought at this time, by adopting Ordinance No. 81-1C, to rezone as described previously the tract of land which included plaintiffs' lot.
Subsequently, plaintiffs instituted this action claiming that in adopting this ordinance the Township acted contrary to the purposes and intent of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. Specifically, plaintiffs alleged that the Township had failed to satisfy the procedural requirements of the Municipal Land Use Law; that the ordinance was passed "in a deliberate effort to reduce the value of plaintiff's land in order to reduce the cost of condemnation of said land" and that the Township had "engaged in a deliberate course of harassment ... in an effort to force the plaintiffs to sell ... for a price value less than fair market value." Plaintiffs charged that Ordinance No. 81-1C constituted spot zoning and was arbitrary and capricious and an abuse of power by the Township. The procedural defects in this ordinance were corrected by the enactment of Ordinance No. 83-9C, the substance of which is identical to Ordinance No. 81-1C.
The trial court declared the ordinance invalid and unconstitutional, reasoning, in part, as follows:
I find that the plaintiff's parcel was subdividable into four 50 foot building lots before the ordinance in question and would only be subdividable into two 100 foot building lots under the terms of the ordinance in question. This adversely effected [sic] the value of the property. The plaintiff's parcel is located in a residential area known as Brant Beach which is almost entirely zoned for 50 foot building lots. Under the new ordinance the plaintiff's 200 foot lot would be the only property in Brant Beach requiring 100 foot lots.
It has been held that use restrictions upon real property must find their justification in some aspect of a police power, reasonably exerted for the public welfare. I can find no relationship to the public welfare in changing the use of a single parcel of property from one permitting a four lot development to one permitting only two lots.
While I am aware that the ordinance in question is entitled to a presumption of validity and that if the local legislative judgment is at least debatable it is to be sustained[,] I find that this ordinance is undebatably unreasonable and arbitrary and hence void as unconstitutional.
*76 The Township appealed, contending that the trial court erred in declaring the amendment to the zoning ordinance unconstitutional. We agree and reverse.

I.
"Zoning is inherently an exercise of the State's police power," Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20 (1976) (originally published at 71 N.J. 249 (1976)) cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977), a power delegated to municipalities by the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. Ordinances enacted pursuant to this authority are accorded a presumption of validity. Id.; Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 350 (1973). To overcome this presumption, a plaintiff bears the heavy burden of proving the challenged ordinance to be "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Bow & Arrow Manor v. Town of West Orange, supra, 63 N.J. at 343. See Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., supra, 80 N.J. at 20.
The exercise of this zoning power is not, however, without limitation. In exercising this power, municipalities "must observe the limitations of the grant and the standards which accompany it," and ordinances enacted pursuant to this power "must bear a real and substantial relationship to the regulation of land within the municipality." Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., supra, 80 N.J. at 21. Furthermore, such ordinances must advance one of the several purposes enumerated in N.J.S.A. 40:55D-2 of the Municipal Land Use Law. See id. The exercise of this municipal legislative function is subject to the strict standards of review set forth above, and "[i]f the local legislative judgment `is at least debatable it is to be sustained.'" Sheerr v. Evesham Tp., 184 N.J. Super. 11, 61 (Law Div. 1982) (quoting Bow & Arrow Manor v. Town of West Orange, supra, 63 N.J. at 343). See also *77 Pascack Ass'n, Ltd. v. Mayor & Coun. Washington Tp., 74 N.J. 470, 481 (1977).
One of the purposes of the Municipal Land Use Law is "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare." N.J.S.A. 40:55D-2a. Additional purposes of the act are as follows:
e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
* * * * * * * *
g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
* * * * * * * *
j. To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land ... [N.J.S.A. 40:55D-2e, g and j].
Clearly the general welfare encompasses concern for the protection of the environment, conservation of natural resources, the need for recreational facilities and the preservation of open space. The Master Plan and the Land Use Plan Element enacted in 1978 evidence an intent on the part of the Township to achieve these desired purposes. The Master Plan, in Chapter V under the subheading "Bay Shore Acres and Recreation," makes the following recommendation:
Several existing and proposed sites along the bayfront should be developed as water access and recreational areas for the Township population. Additional property is being acquired by the Township at the existing bathing beach near the municipal building for expanded recreational usage at this location. New bayfront areas are proposed in North Beach, Loveladies, and High Bar Harbor in conjunction with the "local recreation centers" described above. Existing small areas are located in Beach Haven Terrace (a bathing beach) and Holgate. The latter site is a coast guard station recently acquired by the Township, which has attractive potential as a community center serving primarily the youth and elderly population.
*78 The Master Plan noted the "growing national environmental consciousness" and that the "[n]eeds for protecting the natural resources and amenities of the Township concern both the bayshore and the oceanfront." The Township in its Master Plan indicated it would be guided in development decisions by the policies and applicable requirements of the Wetlands Act of 1970 and the Coastal Area Facilities Review Act. As to the implementation of this plan, the Master Plan provided that "[t]he Township zoning ordinance and map should be revised to reflect the plan and the standards which it contains, including those related to minimum lot sizes." One objective of the plan is to "[m]aintain the single family-oriented low density character of the community by upgrading minimum lot sizes where possible and limiting multi-family housing development."
The power of a local legislative body to enact and amend zoning ordinances such as No. 81-1C and No. 83-9C is governed by N.J.S.A. 40:55D-62, which provides, in part:
a. The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. Such ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance; and provided further that, notwithstanding anything aforesaid, the governing body may adopt an interim zoning ordinance pursuant to subsection b. of section 64 of P.L. 1975, c. 291 (C.40:55D-77).
The zoning ordinance shall be drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of land. The regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of buildings or other structures or uses of land, including planned unit development, planned unit residential development and residential cluster, but the regulations in one district may differ from those in other districts. [N.J.S.A. 40:55D-62a.].
*79 The proofs here show that the enactment of the ordinance under review was consistent with and served to effectuate the intent of the Master Plan. The Township's expert testified that in view of the designation of this area as public open space, the property should not initially have been zoned R-50 and that the subsequent designation of the property as R-10 was consistent with the intent to effectuate the Master Plan, as evidenced by the following excerpt from his testimony:
Q. Do you have any opinion as with respect to the zoning of those properties R-50 and R-10 when compared with the master plan and its land use plan element and recommendations contained therein?
A. I feel that the initial zoning or designation of the properties as R-50 was probably not the best alternative available to the municipality. That would have or could have resulted in the residential type development of the property on relatively small lots with a larger number of structures, assumedly residences, which would result in the development of the property if it were developed in a manner that would not be in keeping with  in best keeping with the master plan designation.
I feel that their ultimate decision in changing to zone it R-10 made the zoning then at that time more appropriate to the designation of public open space and recreation that appeared on the master plan. Of the choices that the governing body had, I think that was the better choice, in keeping with the master plan.
* * * * * * * *
Q. Well, the use of the language of the statute, is zoning in R-10 substantially consistent with the master plan in this case?
A. I think zoning of the property in the least dense use that would still allow the owners of the properties the reasonable use of their land is appropriate and was appropriate.
Q. Well, does R-10 in this situation, from your review, give the property owners reasonable use of their land?
A. Yes, it does.
Q. To use the other term in the statute that appears, was zoning in an R-10 designed to effectuate the master plan? Does it have that effect?
A. Yes.
When questioned particularly as to how zoning the property to a lower density would serve to effectuate the intent of the Master Plan that this tract be utilized as open space, the Township's expert responded:
I think the R-10 zoning would allow the development of the property with fewer houses, obviously, because it would be residential. It would leave more space between houses, and if some of the properties were developed, it would *80 result in less improvements to be perhaps acquired and removed if the municipality moves some day to acquire the property.
Furthermore, while plaintiffs' expert testified that zoning this tract R-10 would be inconsistent with surrounding areas, all of which are zoned R-50, the Township's expert testified that the tract in question was unique:
Well, predominantly the blocks, lots and properties in that section of Long Beach Island, and most of the rest of it, they're rectangular blocks bounded by a street on the four sides of the block. They have a common rear line. They're rectangular lots ranging in size from fifty by ninety to, you know, a hundred by a hundred, or some even larger, of course.
But they're typical rectangular blocks, and there's  you know, they run, for some cases, miles, one right after the other on the west side, east side of Long Beach Boulevard, and to a great extent on the west side between the Boulevard and the bay. There's various areas there where the bay is a considerable distance from the Boulevard, and it has been developed in rectangular block fashion.
There's hardly any other spot or location in the Long Beach Township municipality, along that stretch of Long Beach Boulevard, where there are vacant properties existing that have their frontage on the Boulevard and their rear lines on the bay and they're undeveloped.
Most of the others east of  west of the Boulevard between the Boulevard and the bay, practically all of the land down there has been developed, and in this rectangular block fashion, with the exception of the lots out beyond the boundaries of the rectangular block, which also had their rear lines on the bay and exist, of course, but for the most part they're developed and utilized for various purposes.
This is, in my opinion, I think a very unique different area than you could find or than exists within that general area.
Moreover, Mayor Mancini testified that the Township generally zoned areas designated as public open space at the lowest density which, he explained, "was closest to that open space." Mayor Mancini added that the only reason the tract was not initially zoned R-10 was that "we simply made a mistake. We overlooked it, period."
The 1978 Master Plan and Land Use Plan Element, by designating this area as public open space, evidenced the Township's intent to advance the community interest by providing recreational facilities and access to the bay and by preserving the open space and the aesthetic value of a bay view from Long Beach Boulevard. Thus, at the very least, the challenged *81 ordinance served to effectuate these desired purposes. What Judge Conford stated in this regard in Bow & Arrow Manor v. Town of West Orange, supra, 63 N.J. at 343, is worth repeating:
It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the statute. N.J.S.A. 40:55-31, 32. It is commonplace in municipal planning and zoning that there is frequently, and certainly here, a variety of possible zoning plans, districts, boundaries, and use restriction classifications, any of which would represent a defensible exercise of the municipal legislative judgment. It is not the function of the court to rewrite or annul a particular zoning scheme duly adopted by a governing body merely because the court would have done it differently or because the preponderance of the weight of the expert testimony adduced at a trial is at variance with the local legislative judgment. If the latter is at least debatable it is to be sustained. Kozesnik v. Montgomery Twp., 24 N.J. 154, 167 (1957); Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232, 242 (1962), cert. den. and app. dism., 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963).
Accordingly, we hold that the ordinance was not invalid and that the trial court's holding to the contrary must be reversed.

II.
Furthermore, contrary to plaintiffs' claim, the ordinance does not constitute spot zoning. Although the trial court's opinion is not particularly precise on this issue, we do not read it to mean that the trial court found that the challenged ordinance constitutes spot zoning.
Beyond this, even if the trial court made such a finding, we cannot conclude on this record that the ordinance constitutes spot zoning. The phrase "spot zoning" refers to the situation where a small area or "spot" of land is zoned differently than the surrounding area for the benefit of the owner of such property and to the detriment of others. See 2 Rathkopf, The Law of Zoning and Planning § 28.01[1] (4th ed.). The *82 term is also used, albeit infrequently, to describe the reverse proposition; namely, that a single lot is more severely restricted than adjacent properties. Id. at § 28.01[2]. While this case falls into the latter category, New Jersey cases have apparently addressed this issue only in the context of the former. See, e.g., S & L Associates, Inc. v. Washington Twp., 61 N.J. Super. 312, 328 (App.Div. 1960) aff'd in part, rev'd in part on other grounds, 35 N.J. 224 (1961); Bartlett v. Middletown Twp., 51 N.J. Super. 239, 270 (App.Div. 1958) certif. den. 28 N.J. 37 (1958); Jones v. Long Beach Tp. Zoning Bd. of Adjustment, 32 N.J. Super. 397, 404 (App.Div. 1954). This court has defined "spot zoning" as
the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners, ... the very antithesis of planned zoning. [Jones v. Long Beach Tp. Zoning Bd. of Adjustment, supra, 32 N.J. Super. at 404.]
That a small parcel of land is zoned differently than the surrounding area does not necessarily mean its zoning designation is spot zoning and hence invalid. Zaehring v. Long Beach Tp., 56 N.J. Super. 26, 33 (Law Div. 1959). Spot zoning "is zoning which disregards the requirement ... that regulation be accomplished in accordance with a comprehensive plan to promote the general welfare." Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., supra, 80 N.J. at 18. Thus, where "an ordinance is enacted in accordance with a comprehensive zoning plan, it is not `spot zoning.'" Jones v. Zoning Bd. of Adjustment, Long Beach Tp., supra, 32 N.J. Super. at 404. Accord Bartlett v. Middletown Twp., supra, 51 N.J. Super. at 270.
Here the rezoned tract was designated on the Master Plan as public open space. Since we conclude that zoning this area to a lower density was in accordance with and furthered the Master Plan and advanced the community interest, it logically follows that there was no spot zoning.
Accordingly, the judgment under review is reversed.
NOTES
[1] Although we have not considered this information in reaching our decision today, we note that at oral argument counsel for the Township informed us that the Township did not either purchase or have a contract to purchase the 10 lots, and by subsequent letter confirmed that Colin R. Hazeltine, Esq., the township attorney who was handling the Green Acre closings, represented that

in June of 1982, there were four (4) parcels, including the Riggs tract wherein fee title was not in the Township of Long Beach. As of June, 1983 when the matter was tried and Judge Doherty rendered his Opinion, there were three (3) lots that were not titled in the Township of Long Beach, two (2) in the name of Spiegel and one (1) in the name of Riggs, et als. As of now, May, 1986, there are two (2) lots that remain titled in others than the Township of Long Beach, namely, one in Spiegel and one in Riggs, the subject lot owned by the plaintiffs, Riggs et als, at bar.
[2] On February 21, 1986, while this matter was pending before this court on remand, the Board of Commissioners of the Township of Long Beach adopted Ordinance No. 86-5C, which amended the subdivision ordinance to increase the frontage and area requirements as follows:

SECTION I
Section 17.9.9 subparagraph (a) of the Land Subdivision Chapter be and is hereby amended to read as follows:
"a. Lot dimensions and area shall not be less than the requirements of the zoning chapter; provided, however, that for all new subdivisions subsequent to the effective date of this amendment, subdivisions shall have a minimum of 60 foot frontage and a minimum of 6,000 square feet unless the zoning ordinance requires more stringent standards. Deviation from this provision shall require a variance application with the notice to property owners within 200 feet of the subject subdivision before any such subdivision may be approved."
This ordinance is applicable to all Township property and would appear to preclude the proposed subdivision of the plaintiffs' property.
[3] See infra note 2.