CHARLES J. RIGGS, VIRGINIA RIGGS, HIS WIFE; AND ISLAND HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. TOWNSHIP OF LONG BEACH, DEFENDANT-RESPONDENT.

Argued September 14, 1987—Decided March 23, 1988.

*Richard A. Grossman* argued the cause for appellants (*Grossman & Kruttschnitt,* attorneys; *Steven F. Nemeth,* on the brief).

*Granville D. Magee* argued the cause for respondent (*Magee and Graham,* attorneys; *Philip G. Pagano,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The dispositive issue in this case, which is before us for the second time, is whether the Township of Long Beach enacted the challenged zoning ordinance for a valid purpose. Originally, the Law Division held in 1983 that the ordinance (81–1C) was "undeniably unreasonable and arbitrary and hence void as unconstitutional." In an unreported opinion in 1984, the Appellate Division reversed and remanded because the enactment of a later ordinance (83–9C), which was passed to correct procedur-

al defects pertaining to the enactment of ordinance 81–1C, rendered moot the challenge to that ordinance. Because the later ordinance was identical to the original ordinance, we reversed and remanded the matter to the Appellate Division for reconsideration. 101 *N.J.* 515 (1986). On remand, the Appellate Division found, among other things, that ordinance 83–9C had a valid zoning purpose and again reversed the judgment of the Law Division. 212 *N.J.Super.* 69 (1986). We granted certification, 107 *N.J.* 81 (1987), and now find that ordinance 83–9C, like ordinance 81–1C, does not have such a purpose. We find further that the sole purpose of the two ordinances was to reduce the value of the Riggs property so that the municipality could acquire it below fair market value. Accordingly, we reverse the judgment of the Appellate Division and remand the matter to the Law Division for the entry of an order declaring invalid ordinance 83–9C.

I

The relevant facts are that in 1976 the voters of Long Beach Township approved a referendum for the acquisition of "public open-space" property. At that time, appellants, Charles J. Riggs; Virginia Riggs, his wife; and their corporation, Island Homes, Inc. (collectively Riggs), owned the property in question, which is located between Long Beach Boulevard and Little Egg Harbor. Then, as now, the property, known generally as Block 0–19, Lot 1 on the township tax map, was unimproved. The property was zoned R–50, which allowed residential lots of five thousand square feet, with a minimum width of fifty feet. Consistent with these requirements, Riggs prepared an application in 1977 to subdivide the property into four lots.

In a letter dated December 14, 1977, the township attorney advised Riggs that the proposed subdivision would not be approved because the Township, in light of the 1976 referendum, intended to acquire the property. The letter informed Riggs that the property would be appraised within thirty days,

and if the Township could not acquire the property through contract, it would take the property through the exercise of eminent domain.

Contrary to the letter, the Township did not obtain an appraisal until September 1978, when the property was appraised for $234,500. The Township, however, neither offered to purchase the property nor commenced condemnation proceedings. Instead, that same year, the Planning Board adopted a master plan, and designated as public open space a five-block area consisting of eleven lots, including plaintiffs' property. Notwithstanding the adoption of the master plan, the Township amended the zoning ordinance in 1979 and retained R–50 zoning for the eleven-lot tract and the surrounding area. Thus, two years after the Township refused to process plaintiffs' subdivision application, the Township confirmed its commitment to R–50 zoning, under which Riggs could divide the property into four lots. Furthermore, 80% of the properties west of Long Beach Boulevard were developed on lots of 5,000 square feet or less, and thirty-two of the ninety other lots in the area, *i.e.*, 36% of those lots, had areas less than 5,000 square feet. In short, the R–50 zoning for the Riggs property was consistent with the character of the neighborhood.

In 1979 and 1980, the parties engaged in negotiations in which the Township, consistent with its 1978 appraisal, offered to purchase the property for $234,500. At Riggs' request, the same appraiser valued the property in 1980 at $400,000. Both appraisals reflected the highest and best use of the property, which would be subdivision into four lots of approximately 9,200 square feet each.

Mayor Mancini was anxious to acquire the Riggs property, and the parties considered a sale for $400,000, subject to an immediate donation of $160,000 by Riggs to the Township. Toward that end, the Mayor wrote to Riggs on November 5, 1980, "[b]ecause of the dramatic rise of the value of land on Long Beach Island, and the substantial delay in obtaining

funding, it would be impossible for [the Township] to obtain the property at its present fair market value of $400,000 without you giving us the difference between the present value and the purchase price." The letter corroborates the desire of the Mayor to acquire the property, through one means or another, at the lowest possible price.

Because the parties could not agree, negotiations ended, and in December 1980, the Township instituted an unsuccessful action seeking specific performance of an alleged agreement of sale with Riggs. The Chancery Division dismissed the action and on April 2, 1985, the Appellate Division affirmed that dismissal.

Shortly after the parties ceased negotiations, in December 1980, the Township Committee approved on first reading an amendment to rezone the eleven-lot tract to R–10, which would permit lots with a minimum lot size of 10,000 square feet and a minimum width and depth of 75 feet. The effect would be to reduce the number of building lots on the Riggs property from four to two. In compliance with *N.J.S.A.* 40:55D–63, the commissioners referred the ordinance to the Planning Board for review. Because the Board had already held its regular meeting during the first week of December, Mayor Mancini called a special meeting, which was held in his office on December 23, 1980. At that meeting, the Board, which included Mayor Mancini as an ex officio member, approved ordinance 81–1C. Ten days later, on January 2, 1981, by a vote of 2-to-0, the Township Committee adopted ordinance 81–1C. With one commissioner absent, Mayor Mancini and another commissioner voted to approve the ordinance.

The minutes of the Planning Board recite that the "[p]urpose of ordinance was to retain one of the last remaining open spaces on Long Beach Boulevard. Commissioners were requesting approval and recommendations of planning board to rezone the area prior to the purchase with Green Acre funds."

Thus, those minutes support the inference that the rezoning was related to the acquisition of the Riggs property.

According to Mayor Mancini, who testified for the Township at trial, when the R–10 amendment was first proposed, the Riggs lot was the only affected property that was not yet owned or under contract of sale to the Township. Before the Appellate Division, the Township contended that it had not acquired title to all other lots, but apparently did not challenge the fact that it had executed contracts for the lots it had not acquired. 212 *N.J.Super.* at 72 n. 1.

One month after the adoption of the ordinance, on February 5, 1981, Riggs instituted this action, claiming, among other things, that the sole purpose of the 1981 amendment was to drive down the fair market value of his property so that the Township could acquire it more cheaply. At trial, Mayor Mancini testified about the adoption of the 1981 amendment. He explained that the Township sought to acquire the eleven-lot area for public use pursuant to the 1976 referendum and the 1978 master plan. The other ten property owners had sold or agreed to sell their properties to the Township. When negotiations with plaintiffs broke down, the Mayor realized that the 1979 ordinance retaining R–50 zoning was a mistake. In response to a question from the trial court whether the change in zoning had been precipitated by the problem in acquiring the Riggs property, the Mayor candidly admitted that "[t]here is no question that it provoked thought, discussion, and etc." and that "there's no question that the Riggs situation helped to bring out * * * the thought that we had neglected to zone this [area] properly in 1979." He acknowledged further that neither the physical conditions of the eleven lots nor the general conditions of the Township had changed since the adoption of the 1979 ordinance and the 1981 amendment, but simply claimed that the eleven-lot area should have been zoned low density in 1979. He explained that the Township generally zoned areas designated as public open space at the lowest density because that is "closest to that open space" and "if the

people voted to keep this open space, then it's * * * my responsibility to keep it open space." When asking the Mayor why the Township needed to rezone the Riggs property since it planned on condemning it, the trial court commented: "If you are going to condemn it, then condemn it. What's the difference whether it's in the R–50 or R–10, unless it is to get it at a cheaper price?" The Mayor responded that the 1979 amendment was a mistake, which the 1981 amendment was passed to correct.[1]

---

[1]Mayor Mancini testified as follows:

Q. "All right. And doing all of that, the township zoned this property R–50 in 1979, did it not?"

A. "Correct, yes."

Q. "Now, did any physical conditions change between the adoption of that ordinance in 1979 and the ordinance that is in question here, which was adopted January 22, 1981? Did the property, the eleven lots, physically change in any way?"

A. "No."

Q. "Did general conditions on the island in that area change materially from 1979 to January 2, 1981?"

A. "No."

Q. "What changed between 1979 and the adoption of this ordinance which caused the adoption of this ordinance?"

A. "The process of acquisition under the Green Acres program."

Q. "Meaning, as I take it, that the town wanted these properties for public areas. Correct?"

A. "Yes."

Q. "And had gone about acquiring the ten lots which the town did not own itself. Correct?"

A. "Correct."

Q. "And all the property owners with those—in connection with those lots, with the exception of Mr. Riggs, by January of 1981 had agreed to sell to the township. Correct?"

A. "Yes."

Q. "And Mr. Riggs was the only one who had not agreed. Am I correct? Yes, sir?"

MR. MAGEE: "You can tell him. You can answer whatever you want to. Don't look at me. Tell him what you want."

A. "Well, of course, that's a point of contest. Mr. Riggs had agreed verbally, but we never signed contracts. That's the answer."

Q. "He is the only [one] who had not conveyed. All right?"

A. "Okay, yeah."

In further defense of the amendment, the township planner, Thomas W. Birdsall, asserted that if the Township intended to acquire the property, it had an interest in restricting development to the lowest possible density on the theory that the rezoning would reduce acquisition costs. He further defended the ordinance by saying that the lower density zoning would result in the removal of fewer structures after acquisition by the municipality. His testimony was contradicted by John Maczuga, a planner retained by Riggs, who asserted that the possible future use of the property as public open space was irrelevant to the zoning of the property because the Township would have to acquire the property before it could create the public use.

The trial court concluded:

I find that the plaintiff's parcel was subdividable into four 50 foot building lots before the ordinance in question and would only be subdividable into two 100 foot building lots under the terms of the ordinance in question. This adversely effected [sic] the value of the property. The plaintiff's parcel is located in a residential area known as Brant Beach which is almost entirely zoned for 50 foot building lots. Under the new ordinance the plaintiff's 200 foot lot would be the only property in Brant Beach requiring 100 foot lots.

It has been held that use restrictions upon real property must find their justification in some aspect of a police power, reasonably exerted for the public welfare. I can find no relationship to the public welfare in changing the use of

\* \* \* \* \* \* \* \*

THE COURT: "That is why I say why in the world, if it didn't, I'd like to know what in the world did because nothing else changed, and if you're going to acquire a piece of property and if you want to—if you can't do it by negotiations and you are going to condemn it, then condemn it. What's the difference whether it's in R–50 or R–10, unless it's to get it at a cheaper price?"

A. "Okay. All this entire strip was appraised by two appraisers. All other property owners accepted the appraised price and entered into contracts. Mr. Riggs was the last one \* \* \*."

\* \* \* \* \* \* \* \*

THE COURT: "Well, I think what you did is you said this problem with the Riggs acquisition precipitated this change in zoning."

THE WITNESS: "There is no question that it provoked thought, discussion, and etc."

a single parcel of property from one permitting a four lot development to one permitting only two lots.

While I am aware that the ordinance in question is entitled to a presumption of validity and that if the local legislative judgment is at least debatable it is to be sustained[,] I find that this ordinance is undebatably unreasonable and arbitrary and hence void as unconstitutional.

[212 *N.J.Super.* at 75.]

In reversing, the Appellate Division found that the 1981 amendment was consistent with the purposes stated in the master plan of "protecting the natural resources and amenities of the Township [along] the bayshore and oceanfront," and maintaining the "single family-oriented low density character of the community by upgrading minimum lot sizes where possible and limiting multi-family housing development." 212 *N.J.Super.* at 78 (quoting the master plan). The court accepted the hypothesis of the Township's expert that if property intended to be acquired for public open space will be developed before acquisition, a zoning ordinance restricting development to the lowest possible density has a valid purpose because the restriction to low-density development facilitates acquisition of the property and establishment of the public use. *Id.* at 79–81.

While the matter was pending in the Appellate Division, the Township initiated condemnation proceedings to acquire the Riggs property. Those proceedings, which are still pending, close the circle that began with the Township's letter in 1977 advising that it would deny the subdivision application of Riggs because the Township intended to acquire the property through condemnation.

## II

We begin with an overview of some fundamental principles pertaining to the power to zone. Municipalities do not possess the inherent power to zone, and they possess that power, which is an exercise of the police power, only insofar as it is delegated to them by the Legislature. *Taxpayer Ass'n of Weymouth Township v. Weymouth Township,* 80 *N.J.* 6, 20 (1976). A zoning ordinance is insulated from attack by a

presumption of validity, which may be overcome by a showing that the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." *Bow & Arrow Manor v. Town of West Orange,* 63 *N.J.* 335, 343 (1973); *accord Zilinsky v. Zoning Bd. of Adjustment of Verona,* 105 *N.J.* 363, 368 (1987); *Weymouth Township, supra,* 80 *N.J.* at 20. The party attacking the ordinance bears the burden of overcoming the presumption, *Ward v. Montgomery Township,* 28 *N.J.* 529, 539 (1959); *La-Rue v. East Brunswick,* 68 *N.J.Super.* 435, 454 (App.Div.1961); and, in meeting the burden, that party may rely on extrinsic evidence, *Bellington v. Township of East Windsor,* 32 *N.J.Super.* 243, 248 (App.Div.1954). Courts should not question the wisdom of an ordinance, and if the ordinance is debatable, it should be upheld. *Bow & Arrow Manor, supra,* 63 *N.J.* at 343; *see also Zilinsky, supra,* 105 *N.J.* at 368–69 ("[a] mere difference of opinion as to how an ordinance will work will not lead to a conclusion of invalidity; 'no discernible reason' is the requisite standard").

Although the judicial role is circumscribed, a court may declare an ordinance invalid if in enacting the ordinance the municipality has not complied with the requirements of the statute. *Weymouth Township, supra,* 80 *N.J.* at 21. Generally, a zoning ordinance must satisfy certain objective criteria. First, the ordinance must advance one of the purposes of the Municipal Land Use Law as set forth in *N.J.S.A.* 40:55D-2. *Id.* Second, the ordinance must be "substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements," *N.J.S.A.* 40:55D-62, unless the requirements of that statute are otherwise satisfied. Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, *Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 137 (1979); equal protection, *Southern Burlington County N.A.A.C.P. v. Mount Laurel Township,* 92 *N.J.* 158, 208–09 (1983); and the prohibi-

tion against confiscation, *AMG Assocs. v. Township of Springfield*, 65 *N.J.* 101, 111–12 (1974). Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements. P. Rohan, *Zoning & Land Use Controls* § 36.02[1] at 36–15 (1986).

The present case focuses on the first criterion, which requires that the ordinance must have a valid purpose. One of the purposes of the Municipal Land Use Law is "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare." *N.J.S.A.* 40:55D–2a. In addition, the Act specifically states that one of its purposes is to provide for open space. *N.J.S.A.* 40:55D–2.[2] An ordinance enacted solely to reduce the municipality's cost of acquisition of the land affected by the ordinance, however, does not fulfill a valid zoning purpose. *Wital Corp. v. Denville*, 93 *N.J.Super.* 107 (App.Div.1966). Other states also recognize that it is an abuse of the zoning power to enact an ordinance for the sole purpose of depressing the value of property that the municipality seeks to acquire through condemnation. *City of Miami v. Silver*, 257 *So.*2d 563, 569 (Fla.Dist.Ct.App.1972); *Long v. City of Highland Park*, 329 *Mich.* 146, 45 *N.W.*2d 10, 13 (1950); *Grand Trunk R.R. Co. v. City of Detroit*, 326 *Mich.* 387, 40 *N.W.*2d 195 (1949); *Sanderson v. Willmar*, 282 *Minn.*

---

[2]The statute provides in relevant part:

   c. To provide adequate light, air and open space;

        \*   \*   \*   \*   \*   \*   \*   \*

   g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;

        \*   \*   \*   \*   \*   \*   \*   \*

   j. To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land \* \* \*.

1, 162 *N.W.*2d 494, 497 (1968); *State v. Gurda,* 209 *Wis.* 63, 243 *N.W.* 317 (1932).

In determining whether the ordinance was adopted for an unlawful purpose, we distinguish between the purpose of the ordinance and the motives of those who enacted it. Courts generally will not inquire into legislative motive to impugn a facially valid ordinance, but will consider evidence about the legislative purpose "when the reasonableness of the enactment is not apparent on its face." *Clary v. Borough of Eatontown,* 41 *N.J.Super.* 47, 71 (App.Div.1956). Although the distinction between motive and purpose can be fuzzy, "motive" ordinarily addresses the subjective considerations that move a legislator, and "purpose" speaks to the goals to be achieved. *See also* Black's Law Dictionary 914 (defining "motive" as "[c]ause or reason that moves the will and induces action") and 1112 (defining "purpose" as "[t]hat which one sets before him to accomplish; an end") (5th ed. 1979). The determination of "purpose" depends on objective factors, such as the terms of the ordinance and its operation and effect, as well as the context in which the ordinance was adopted. *Developments in the Law,* 82 *Harv.L.Rev.* 1065, 1091 (1969).

▮▮▮ If an ordinance has both a valid and an invalid purpose, courts should not guess which purpose the governing body had in mind. *See United States v. O'Brien,* 391 *U.S.* 367, 383–84, 88 *S.Ct.* 1673, 1682–83, 20 *L.Ed.*2d 672, 684 (1968). If, however, the ordinance has but one purpose and that purpose is unlawful, courts may declare the ordinance invalid. Hence, when a party challenging an ordinance asserts that it was adopted for the improper purpose of depressing the value of the property in a condemnation proceeding, the court may seek to ascertain the municipality's true purpose in enacting the ordinance. This inquiry should be limited to an evaluation of the objective facts surrounding the adoption of the ordinance.

### III

The Township defends the ordinance amending the zoning of the eleven-lot tract from R–50 to R–10 by asserting that the ordinance promotes open space, controls population density, and prevents urban sprawl and the degradation of the environment. Additionally, the Township's land use expert testified that it is "at least debatable" that the ordinance serves to effectuate the intent of the master plan.

In attacking the ordinance, Riggs points to various objective factors, such as the practical effect of the terms of the ordinance and the context in which it was adopted. The Township's interest in acquiring the Riggs property for public open space by purchase or condemnation manifested itself as early as 1977, when Riggs prepared a subdivision application. The Township advised Riggs that the application would not be approved because of the Township's plan to acquire the property, which was subsequently earmarked for public open space in the 1978 master plan.

When the Township was unable to negotiate a contract to acquire the Riggs property, it instituted an unsuccessful specific performance action against them. Mayor Mancini's November 5, 1980, letter to Riggs iterated the Township's interest in purchasing the property, but claimed that the Township did not have funds to consummate the purchase. While all this was going on, the Township confirmed in 1979 the R–50 zoning for the property.

In the interim before the adoption of the ordinance downgrading the property to R–10, neither the physical conditions of Brant Beach nor the general conditions of the Township had changed. All that had changed was that the Township had acquired or contracted to acquire the other lots earmarked for public open space. The minutes of the December 23, 1980, Planning Board meeting confirm that the Township adopted the 1981 ordinance with an eye toward condemning the Riggs property. In sum, objective facts establish that the sole purpose of the ordinance was to permit the Township to purchase the property more cheaply.

Although the record in this case includes correspondence and testimony of Mayor Mancini, we need not rely on that evidence to conclude that the ordinance did not serve any valid zoning purpose. We anticipate that testimony about the mental processes of municipal officials ordinarily will be immaterial to establishing the validity of a zoning purpose. Here, the objective facts, from the public referendum in 1976 to the condemnation proceedings initiated in 1987, constitute a continuous attempt by the Township to acquire the property at the lowest possible price. When it could not acquire the property through negotiations, the Township unsuccessfully sued Riggs for specific performance and rezoned the property from four lots to two. Having reduced the value of the property through the zoning amendment, the Township then initiated condemnation proceedings in 1986.

Our holding that the challenged ordinance is invalid need not preclude other municipalities from zoning other property more restrictively on a different set of facts. Here, however, the municipality simultaneously planned for open space and zoned for residential use. The purpose of the zoning amendment was not to fulfill the master plan, but to enable the municipality to pay the property owner less than fair market value under the preexisting zoning ordinance.

Under the Municipal Land Use Law, "open space" is a defined term that contemplates that the land will be "essentially unimproved" except for buildings "that are designed to be incidental to the natural openness of the land." [3] *N.J.S.A.* 40:55D–5. The designation of "open space" contemplates the

---

[3]*N.J.S.A.* 40:55D–5 provides in relevant part:

"Open space" means any parcel or area of land or water essentially unimproved and set aside, dedicated, designated or reserved for public or private use or enjoyment or for the use and enjoyment of owners and occupants of land adjoining or neighboring such open space; provided that such areas may be improved with only those buildings, structures, streets

property will remain unimproved. In contrast, the purpose of zoning for residential use is not to leave the property unimproved, but to permit it to be developed for that purpose. Amending a zoning ordinance so that property can be developed in two lots instead of four does not change the fact that it will be developed inconsistently with the master plan. To some extent, therefore, the provision in the ordinance for residential use is inconsistent with the open-space designation in the master plan. Riggs, however, has not challenged the ordinance because of that inconsistency. We recognize that any development, including that for residential use, is somewhat inconsistent with open space. It suffices to note that the inconsistency between residential use and open space corroborates the conclusion that the amendment, which continued to permit development for residential purposes, was adopted for an invalid purpose.

In recognition that a municipality might want to zone inconsistently with the master plan, the Municipal Land Use Law provided that a majority of the full membership of the governing body might adopt such a zoning ordinance if the reason for so acting was "recorded in the minutes when adopting such ordinance." [4] In the present case, the governing body never attempted to comply with that requirement. Even if it had been adopted in accordance with the requirements of *N.J.S.A.*

---

and offstreet parking and other improvements that are designed to be incidental to the natural openness of the land.

[4] In 1981, when the challenged ordinance was adopted, *N.J.S.A.* 40:55D–62 allowed adoption of a zoning ordinance inconsistent with the master plan by stating that a municipality:

may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing element, but only by an affirmative vote of a majority of the full authorized membership of the governing body, with the reason of the governing body for so acting recorded in its minutes when adopting such ordinance * * *.

In 1985, this section was amended to require that the explanation for the deviation from the master plan be "set forth in a resolution." *L.* 1985, *c.* 516.

40:55D–62, the ordinance would fail. As the objective facts make clear, the unswerving purpose of the municipality from beginning to end has been to acquire the property for open space without paying a fair price.

The Township's attempt to link the reduction of lots to the designation of open space in the master plan is nothing more than a red herring to divert attention from the true purpose of the ordinance. Contrary to the testimony of the Township's land use expert, the ordinance did not create or preserve open space; it merely reduced the number of buildable lots from four to two as a means of reducing the fair market value of the Riggs property. The empty recitation of zoning cant by a land use expert is insufficient to sustain an ordinance that is unsupported by objective facts.

Ordinarily, we would remand this matter to the trial court for reconsideration in light of the opinion. After seven years of litigation and two appeals in this Court, however, we are sufficiently familiar with the matter to conclude that the ordinance cannot stand. The record amply supports the conclusion that the ordinance is not rationally related to a valid zoning purpose and, as the trial court found, that the ordinance is "undeniably unreasonable and arbitrary * * *." The time has come to bring this matter to a close. A remand to the Law Division is necessary, however, because of the pendency of condemnation proceedings. In those proceedings, ordinances 81–1C and 83–9C shall be treated as invalid, and the Riggs property shall be evaluated as it was zoned in 1980, to permit subdivision into four lots in accordance with the requirements of R–50 zoning.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Concurring*—Justice HANDLER—1.

HANDLER, J., concurring.

The Court invalidates Long Beach ordinances 81–1C and 83–9C (the two identical zoning amendments at issue) on the grounds that they do not have a valid purpose and in fact were enacted to enable the Township to acquire the property at less than its fair market value. While I concur with its conclusion that the ordinances should be invalidated and that the Riggs' property should be valued in the condemnation proceedings as if it were zoned R–50, I do not think it is necessary to walk the fuzzy line between motive and purpose to reach this result. In my opinion the ordinance is invalid because it fails to comply with the standards requiring conformity with comprehensive planning as required by the Municipal Land Use Law. *N.J.S.A.* 40:55D–1 to –112.

Land-use planning is a prominent element of zoning under current law. The role of planning under the current zoning statute is in sharp contrast to the practice under the previous zoning act. Prior to the enactment of the Municipal Land Use Law (*L.* 1975 *c.* 291), there was only a loose, almost precatory requirement that a zoning ordinance reflect sound planning. All that the act demanded was that a zoning ordinance be designed to further at least one of a number of enumerated purposes, and be in accordance with a "comprehensive plan." *N.J.S.A.* 40:55–32. However, the term "comprehensive plan" was something of a misnomer. It was not specifically defined by statute and it did not denote rigorous or systematic planning as an actual concomitant condition of a zoning ordinance. The "comprehensive plan" under the old act was not an actual blueprint for development and did not approximate a "master plan." *See:* Cunningham, "Control of Land Use in New Jersey by Means of Zoning," 14 *Rut.L.Rev.* 37, 54 (1959). To determine whether a particular zoning ordinance was "in accordance with a comprehensive plan," courts would inquire as to whether the municipality's entire zoning scheme, including the challenged ordinance, could be considered "an integrated product of a rational process." *See Kozesnik v. Montgomery Tp.,* 24 *N.J.*

154, 166 (1957). Such a "rational process" could be inferred from diverse elements or sources, such as filed maps, other ordinances relating to land use, and regulatory elements touching on diverse matters such as public safety and transportation. Thus, a "comprehensive plan" served to describe a result rather than a process.

This legislative scheme often led to zoning enactments that reflected little or no actual planning. *See Pop Realty Corp. v. Springfield Tp. Bd. Adj.,* 176 *N.J.Super.* 441, 448 (Law Div. 1980) (discussing planning prior to the enaction of the Municipal Law Use Law). Further, municipalities were not even required to prepare or adopt a master plan, and even if a master plan was adopted it did not place any restrictions on the municipal governing body, which was free to disregard the plan in the adoption of zoning ordinances. In short, the adoption of a master plan by a municipality had no legal consequences. *Cochran v. Summit Planning Bd.,* 87 *N.J.Super.* 526, 535 (Law Div.1965).

In contrast, the Municipal Land Use Law enhances the role of planning in land use regulation and zoning. This reflects one of the primary purposes of the legislation, "to achieve a better coordination of land use planning and regulation," Report on S.3054 by the County and Municipal Government Committee, 1 (1975), by establishing clearer standards for the evaluation of municipal land use regulation. Under the Municipal Land Use Law "of particular importance [is] the requirement for a stricter conformity between the master plan, official map, and zoning ordinances." *Id.* at 2.

This heightened role of planning is reflected in several ways. Under the Municipal Land Use Law, a prerequisite of the exercise of the zoning power by a municipality is the preparation and adoption of a master plan. *See N.J.S.A.* 40:55D–62. In addition, the envisioned master plan is a much more detailed, rigorous and systematic exercise in planning than that which sufficed under the old Planning Act, which merely stated that a

municipality's optional master plan "generally shall comprise land use, circulation, and a report presenting the objectives, assumptions, standards and principles which are embodied in the various interlocking portions of the master plan." *N.J.S.A.* 40:55–1.10. A master plan under current law must include a statement of objectives and assumptions as well as a land use plan element and housing element. *N.J.S.A.* 40:55D–28b. The plan must also state its relationship to other potential plan elements, such as transportation, utilities, community facilities, recreation, environmental and energy conservation, and historic preservation. *See N.J.S.A.* 40:55D–28b(1)–(10). It also must disclose the technical foundation for the master plan and its constituent elements. *N.J.S.A.* 40:55D–28b(11).

The emphasis upon planning as a prerequisite of zoning is also reflected in the statutory responsibility on the part of municipalities to engage in continuing planning. The Municipal Land Use Law calls for periodic review of master plans. The governing body must reexamine the master plan and adopt by resolution a report containing its findings at least once every six years, stating the problems and objectives relating to land development, the extent to which these concerns had been addressed and the extent to which the assumptions or policies that provided the basis of the existing master plan had changed. *N.J.S.A.* 40:55D–89. *See Levin v. Township of Parsippany Troy Hills,* 82 *N.J.* 174, 181 n. 3 (1980) ("the legislative intent is that a municipality should reexamine its land use regulations periodically.")

The reason for this elaborate statutory framework is that unlike the practice with respect to the optional master plans under the old Planning Act, the Municipal Land Use Law demands stricter conformity between the master plan and land use regulation. *N.J.S.A.* 40:55D–62 requires that "all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements[.]"

Unlike the situation discussed in cases like *Cochran, supra,* 87 *N.J.Super.* at 535, under current law the master plan cannot be ignored. Indeed, compliance with the planning standard must be demonstrated.

It is thus clear that the focus of the Municipal Land Use Law is on the enhanced role of planning and that it strengthens the planning process itself. The statutory enumeration of the factors to be considered in formulating a master plan, and the statutory directive that the master plan itself include an evaluation of proposed ordinances in light of these factors, *N.J.S.A.* 40:55D–28b(2), serve the end of heightening the role of planning as a condition of proper zoning. It follows that the requirement that a zoning ordinance be substantially consistent with the master plan should be strictly enforced. It is not amiss to note, further, that the requirement of zoning to conform to a master plan is tempered by some flexibility. Thus, if a municipality adopts an ordinance that is not consistent with its current master plan it must demonstrate a basis for any such departure. Under *N.J.S.A.* 40:55D–62, a municipality:

> may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by an affirmative vote of a majority of the full authorized membership of the governing body, with the reason of the governing body for so acting [1] recorded in its minutes when adopting such a ordinance[.]

As the Court in *Levin* observed: "under the new law the power of a municipality to zone remains intact, restricted only by specified procedural requirements and safeguards." *Levin, supra,* 82 *N.J.* at 179. Therefore, a municipality may disregard its master plan provided proper procedural requirements are met. *See* Sponsor's Statement to S.3054 (1975) (Municipal Land Use Law retains all the present powers of municipalities). In light of the procedures provided by the Legislature to allow municipalities to validate inconsistent ordinances, when read in

---

[1] In 1985, this section was amended to require that the explanation for deviating from the master plan be "set forth in a resolution[.]" *L.*1985 *c.* 516.

conjunction with the Law's overarching concern with encouraging planning, it is clear that the Legislature intended that the requirement that ordinances be substantially consistent with the master plan be rigidly enforced.

The ordinance at issue here is not substantially consistent with the master plan within the meaning of *N.J.S.A.* 40:55D–62. The municipal master plan was adopted in 1978. It provides that the area encompassing the Riggs' property be devoted to "open-space." However, both ordinance 81–1C and 83–9C call for residential use in the area devoted to open space use by the master plan. "Open-space" is a defined term under the Municipal Land Use Law. Under *N.J.S.A.* 40:55D–5, open-space is land or water essentially unimproved and reserved for the enjoyment of such open-space. The Law provides that "such areas may be improved with only those buildings, structures, streets and offstreet parking and other improvements that are designed to be incidental to the natural openness of the land." *Id.* Thus, the statute itself in this case furnishes a standard for determining whether a zoning ordinance is "substantially consistent with" the master plan. The question is thus whether the residential use permitted by the ordinances in question is "designed to be incidental to the natural openness of the land."

It clearly is not. Residential use is not consistent with open-space. Residential dwellings that could be constructed as of right under the ordinance in an area designated by the master plan to be devoted to open-space would not be anything like an improvement, such as perhaps a rest station, that might be truly "incidental to the natural openness of the land." In *Sheerr v. Evesham Tp.*, 184 *N.J.Super.* 11, 59–60 (Law Div. 1982), an ordinance allowing residential structures as a conditional use in an area designated as "park or preservation area" was found to be neither consistent with the master plan nor designed to effectuate it. Even under the old zoning act, open-space provisions that provided insufficient guarantees that the land would in fact be dedicated to open-space were invalid. *See Mountcrest Estates, Inc. v. Mayor of Rockaway Tp.*, 96

*N.J.Super.* 149, 156 (App.Div.), certif. den. 50 *N.J.* 295 (1967) (cluster zoning ordinance that did not limit the municipal purpose to which its open-space allotment could be dedicated found invalid). *See also Route 15 Associates v. Jefferson Tp.,* 187 *N.J.Super.* 481, 487 (App.Div.1982) (ordinance zoning property in commercial area as residential not consistent with master plan). This is not to say that a master plan has the operative effect of a zoning ordinance. It does, however, constitute a substantive standard against which a zoning ordinance is to be measured in terms of "substantial consistency."

As noted, if an ordinance is inconsistent with the master plan, the ordinance is invalid unless it is approved by a majority of the full authorized membership of the governing body with the reason for the deviation from the master plan recorded in the minutes of the meeting. This did not occur in this case.

In addition to this procedural deficiency, the ordinance is also substantively invalid. Since the Municipal Land Use Law was intended to retain the powers municipalities enjoyed under prior zoning laws, *see* Report on S.3054 by the Municipal and County Government Committee 1, of necessity the substantive limitations on this power must also be enforced. Therefore, a zoning ordinance that is inconsistent with the land use element of the master plan is not a legitimate exercise of the zoning power unless the ordinance represents more than a haphazard or piecemeal regulation of land use. In other words, the matrix of the municipality's land use regulations, including the ordinance in question, must reveal a comprehensive plan for the zoning of the community. This resort to the test under the prior zoning statute is appropriate here where the test's successor, the "substantially consistent" test does not apply, and the municipality is exercising its pre-Municipal Land Use Law power to disregard its own master plan. In addition, it provides a well-defined, judicially developed standard to fill a void left in the current zoning statute. Furthermore, the test appears to be the most appropriate substantive standard, since "[t]he specific requirement of a 'comprehensive plan' is intended to

avoid an arbitrary, unreasonable, or capricious exercise of the
zoning power[,]" *Speakman v. Mayor of North Plainfield,* 8
*N.J.* 250, 256 (1951) and is thus a guarantee that the zoning
power is used for the public good to secure reasonable neigh-
borhood uniformity. *Id.* at 257. This inquiry is even more
appropriate in cases such as this, where the fact that the
municipality has deviated from its own detailed plan creates a
strong possibility of arbitrary or capricious municipal action or
a conflict with existing uses and structures.

Under this standard, the ordinance in question must fall.
The effect of the ordinance is to allow residential development
in an area intended to be dedicated to open-space use. More
accurately, it allows two residential units to be placed on the
Riggs' land. In actuality, however, the Riggs' land is undevel-
oped, as are all of the other parcels of land affected by the
ordinance. Furthermore, since the municipality has purchased
the other parcels with the intent to maintain their undeveloped
status, the only property on which it is possible development
will take place is the Riggs'. The ordinance thus permits
residential development in an area that is dedicated to open-
space use both by the master plan and in actuality. The
proposed ordinance is thus an arbitrary and capricious exercise
of the zoning power. *See e.g. Speakman, supra,* 8 *N.J.* at 257
(ordinance allowing foundry in the midst of a residential devel-
opment found not in accord with a comprehensive plan). *See
also Mountcrest Estates, supra,* 96 *N.J.Super.* at 156–57 (open-
space ordinance which places no limit on the uses to which the
municipality can put the open-space land invalid).

The invalidation of the ordinances in question, and the rever-
sion of the Riggs' property to its pre-existing R–50 zoning, does
not prevent the Township from following through on its plan to
devote the property to open-space. In fact, the Township has
already initiated condemnation proceedings for this purpose.
Nor do I believe that the approach outlined here requires that
any change in the zoning of a parcel of property must mirror its
designation in the master plan. Under the facts of this case,

however, the proposed ordinance is inconsistent with the master plan and the resulting zoning scheme cannot be considered an integrated product of a rational process of land use regulation.

For these reasons, I believe the ordinance at issue here should be invalidated and the property valued under its pre-existing R–50 zoning. I therefore concur in the opinion of the Court adjudging the ordinance invalid.