688 A.2d 672

JAY NADELSON AND DEBORAH NADELSON, PLAINTIFFS, v. THE TOWNSHIP OF MILLBURN, NEW JERSEY, ET AL, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided July 23, 1996.

550

*Bennett M. Stern* (*Stern, Lavinthal, Norgaard & Daly,* attorneys) for plaintiffs.

*John J. Delaney, Jr.* and *Roger S. Clapp* (*Cooper, Rose & English,* attorneys) for defendants.

*Alan G. Trembulak* (*Woods & Trembulak,* attorneys) for *Amici Curiae.*

*Elizabeth S. Merritt* for National Trust for Historic Preservation.

## OPINION

WEISS, A.J.S.C.

This matter was initiated by plaintiffs, Jay Nadelson and Deborah Nadelson (plaintiffs), by way of complaint in lieu of prerogative writ against defendants, Township of Millburn (Township), the Historic Preservation Commission of the Township of Millburn (Commission), and the Township construction official, Philip Kehoe (Kehoe), individually. Plaintiffs are homeowners of a residence located at 164 Highland Avenue, Short Hills, New Jersey. Plaintiffs' property is located within the Short Hills Park Historic District, but is not designated as an historic property.

In or about September 1995, plaintiffs hired an architect, John B. Rubinstein (Rubinstein), to prepare a site plan and architectural drawings in anticipation of the construction of an addition to their house, which can be described as a Colonial style house constructed around 1945–1950. Plaintiffs sought to demolish an existing one story, two car, rear facing garage and a connecting one story left wing of the house, and to construct a new two story wing, a rear addition, and a two story, side facing four car garage. The drawings were presented to the construction official, Kehoe, who advised that he could not issue a construction permit without the review and approval of the Historic Preservation Commission. Plaintiffs did not avail themselves of the informal review process available under section 807 of the ordinance before submitting their application to the Commission. On October 12, 1995, plaintiffs and Rubinstein appeared before the Commission seeking approval of their plan. During the hearing, the Commission indicated to plaintiffs that the Commission was inclined to vote against their application and suggested that plaintiffs continue their application in order to further discuss it with the Commission. Plaintiffs refused to adjourn their case and requested a vote on their application as presented. The Commission then advised plaintiffs by way of letter dated October 13, that their application was rejected for failing to meet the criteria established by Article 8 (the Historic Preservation Article) of the ordinance. On November 2, the Commission by way of Resolution memorialized the denial of plaintiffs' application for the demolition and construction permit.

Initially, plaintiffs appealed the construction official's decision to the Millburn Zoning Board of Adjustment. Plaintiffs then withdrew that appeal in mid-January 1996, and on January 23, filed their two count complaint in lieu of prerogative writ in this action. Count one alleged that the ordinance was unconstitutionally vague. Count two alleged that the Commission's decision was arbitrary, capricious and unreasonable.

On April 8, plaintiffs filed a motion for summary judgment on count one, seeking a ruling that the ordinance be declared unconstitutional and directing the construction official to issue a construction permit, provided the plans were in compliance with all other sections of the Millburn zoning ordinance. Prior to the May 24, return date of plaintiffs' motion for summary judgement, defendants filed their motion to dismiss plaintiffs' complaint for failure to exhaust administrative remedies. On May 10, the court heard oral argument on defendants' motion. By court order dated May 31, this court denied defendants' motion to dismiss the complaint for failure to exhaust administrative remedies and, upon consent of plaintiffs, dismissed count two of the complaint with prejudice.

Plaintiffs' voluntary dismissal of count two of the complaint with prejudice bars plaintiffs from any challenge to the Commission's decision. Consequently, plaintiffs are limited to a facial challenge to the constitutionality of section 805.2 of the ordinance. On June 4, defendants filed a cross motion for summary judgment. On June 14, this court signed an order granting The National Trust for Historic Preservation in the United States, Preservation New Jersey, Inc. and National Alliance of Preservation Commissions leave to appear in this matter as *amicus curiae* in connection with plaintiffs' pending motion for summary judgment and all other substantive matters involving the Millburn Historic Preservation Ordinance. On June 28, this court signed an order which admitted Elizabeth S. Merritt to appear in this matter *pro hac vice*, as counsel for *amici curiae*.

## I. DISCUSSION

The sole issue before this court on the cross-motions for summary judgment is whether section 805.2 of the ordinance is unconstitutional on its face as impermissibly vague. Section 805.2 provides:

(A) *Purpose.* The intent of this Section is to require historic preservation considerations to be taken into account only in the case of proposed demolitions of and

additions and certain alterations to structures on non-designated sites, in recognition of the lesser importance of such structures to the integrity and character of designated historic districts.

(B) *Applicability.* The historic preservation provisions in this Section shall apply to all non-designated sites. Advisory opinions relating to additions and alterations on such non-designated sites shall apply only to the following:

(1) Any addition or alteration which increases the floor area of a structure, including outward expansion on an enlarged foundation area, upward expansion by adding dormers or raising the roof, and the enclosure of existing open roofed areas;

(2) Any addition or alteration which changes the roof line or increases the amount of roofed area of a structure, including unenclosed roofed areas; and

(3) Notwithstanding the foregoing, an addition or alteration shall require an advisory opinion only if it would be visible from a public street.

(C) *Additions and Alterations.* Any addition or alteration specified in Paragraph 805.2(B) above shall be undertaken with respect to a structure on a non-designated site only after an historic district addition advisory opinion has been issued. Such advisory opinion shall specify whether or not the proposed addition or alteration would adversely impact upon the architectural and historic character of the designated historic district, based upon consideration of the following:

(1) Architectural plans for the proposed addition or alteration and compatibility with the existing structure;

(2) Compatibility with other structures in the designated historic district in which it is located, particularly structures on nearby designated historic sites; and

(3) Features such as arrangement, texture, material, and setting which avoid exterior effects *obviously incongruous with the purposes set forth in this Article.*

(D) *Demolition.* A principal structure on a non-designated site shall be demolished only after the issuance of an historic district demolition permit, and if such permit is issued, any new construction shall be subject to the requirements of section 805.3. Such permit shall be issued only if the structure does not significantly contribute to the character of the designated historic district or the applicant satisfies the criteria for an historic site demolition permit under Section 805.1(B).

(E) *Relocation.* A principal structure on a non-designated site shall be relocated only after the issuance of an historic district relocation permit. Such permit shall be issued only if the structure to be relocated does not significantly contribute to the character of the designated historic district or the applicant satisfies the criteria for an historic site relocation permit under Section 805.1(C).

[*Township of Millburn, Ordinances,* art. 8, § 805.2 (emphasis added) ]

Plaintiffs argue that the ordinance is unconstitutionally vague because it fails to provide sufficient guidelines so that an historic district property owner may reasonably know what limitations are

placed upon his rights of expansion, alteration and the like. Plaintiffs further argue that the Commission could not make a rational determination based on the vague language of section 805.2 of the ordinance.

Defendants argue that the ordinance must be sustained because its design criteria and guidelines are sufficiently clear and not impermissibly vague. Defendants assert that there are multiple layers of design criteria and guidelines surrounding, included in and supporting the ordinance.

The adequacy of standards governing the application of historic preservation ordinances to proposed land use and development is a question of first impression in New Jersey. "Article IV, section VII, paragraph 11 of the New Jersey Constitution provides that 'any law concerning municipal corporations formed for local government ... shall be liberally construed in their favor.'" *515 Associates v. City of Newark*, 132 *N.J.* 180, 185, 623 *A.*2d 1366 (1993). In *Riggs v. Township of Long Beach*, 109 *N.J.* 601, 538 *A.*2d 808 (1988), the New Jersey Supreme Court, in addressing the burden which must be overcome when challenging a zoning ordinance, said:

> A zoning ordinance is insulated from attack by a presumption of validity, which may be overcome by a showing that the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'
>
> [*Id.* at 610–11, 538 *A.*2d 808 (citations omitted) ]

In *State v. Cameron*, 100 *N.J.* 586, 498 *A.*2d 1217 (1985), the New Jersey Supreme Court addressed the law on vagueness within the context of a zoning case, when it stated:

> [T]he constitutional ban on vague laws is intended to invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application. The requirement of statutory clarity "is essentially a due process concept grounded in notions of fair play."
>
> To avoid the pitfall of vagueness, the terms of a zoning ordinance must enable a person of "common intelligence, in light of ordinary experience" to understand whether contemplated conduct is lawful. The determination of vagueness must be made against the contextual background of the particular law and with a firm understanding of its purpose. As noted in *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 *U.S.* 489, 498, 102 *S.Ct.* 1186, 1193, 71 *L.Ed.*2d 362, 371

(1982), the standard to determine the vagueness of a law is not one that can "be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment."

Not all statutes need attain the same level of definitional clarity under the vagueness doctrine. For example, a statute effecting "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands ... can be expected to consult relevant legislation in advance of action." Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

[*Id.* at 591–92, 498 *A.*2d 1217 (citations omitted) ]

In this case, plaintiffs have facially challenged the constitutionality of the ordinance. In *Cameron, supra,* 100 *N.J.* at 593–94, 498 *A.*2d 1217, the Court, in setting forth the differing analysis to be used when a statute is challenged as applied, or facially, said:

Judicial analysis of statutory vagueness ... depends upon whether a law is challenged as applied, or facially. A statute that is challenged facially may be voided if it is "impermissibly vague in all its application," that is, there is no conduct that it proscribes with sufficient certainty.

A statute can be challenged "as applied" if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced.

To summarize, *a law that is challenged for facial vagueness is one that is assertedly impermissibly vague in all its applications.* A statute that is challenged as applied, however, need not be proven vague in all conceivable contexts, but must be shown to be unclear in the context of the particular case.

[*Id.* (emphasis added) (citations omitted) ]

In determining the cross-motions for summary judgment, this court must decide whether section 805.2 is impermissibly vague in all of its applications. In *Brill v. Guardian Life Insurance Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), the Supreme Court held that

when deciding a motion for summary judgment under *Rule* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider *whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.* This assessment of the evidence is to be conducted in the same manner as that required under *Rule* 4:37–2(b).

[*Id.* at 523, 666 *A.*2d 146 (emphasis added) ]

Or, as the Court stated,

the essence of the inquiry in each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." [*Anderson v.*] *Liberty Lobby, supra,* 477 *U.S.* [242] at 251–52, 106 *S.Ct.* [2505] at 2512, 91 *L.Ed.*2d [202] at 214 [ (1986) ].

[*Id.* at 536, 666 *A.*2d 146]

Although the adequacy of standards governing the application of historic preservation ordinances to proposed land use and development has not previously been ruled upon in New Jersey, it has previously been considered in other jurisdictions. Plaintiffs cite to *Texas Antiquities Committee v. Dallas County Community College District,* 554 *S.W.*2d 924 (Tex.1977), in support of its contention that the ordinance is unconstitutionally vague.

In *Texas Antiquities,* the Dallas Community College District filed suit for an injunction against the Texas Antiquities Committee to set aside the Committee's order denying a permit to demolish three buildings owned by the College District. The Texas Antiquities Code vests the Antiquities Committee with the authority to determine the site of, and to designate, State Archaeological Landmarks. The Code also proscribes any construction on any State Archeological Landmark without first obtaining a permit from the Antiquities Committee. Section 6 of the Code sets forth what constitutes a State Archaeological Landmark. The Antiquities Committee contended that the three buildings in question were of "historical interest." Thus, the sole basis for the Committee's authority over the buildings could be found in the language of Section 6 which read, " 'All ... buildings ... and locations of historical ... interest.' " *Id.* at 927.

The trial court determined that the language of section 6 was unconstitutionally vague. *Id.* On appeal, the Texas Supreme Court, in a five to four decision, noted that the Committee had the power to adopt rules or standards which state criteria for " 'buildings ... and locations of historical ... interest,' " but failed to do so. In fact, the Committee did not even contend that section 6

gave any predictable standard or safeguard. The Committee took the position that the law which strikes down statutes because they are vague, overbroad and uncertain should be overruled. "It argue[d] that the power of the legislature to delegate its powers to state boards and commissions should be unlimited so long as there are experts who constitute the membership of the Committee." *Id.* In rendering its decision, the Texas Supreme Court said:

> There has been called to our attention no case in Texas or elsewhere in which the powers of a state board are more vaguely expressed or less predictable than those permitted by the phrase in question. The word "buildings" comprehends all structures; "historical" includes all of the past; "interest" ranges broadly from public to private concerns and embraces fads and ephemeral fascinations. All unrestorable structures ordinarily hold some nostalgic tug upon someone and may all qualify as "buildings . . . of historical . . . interest."
>
> Upon the basis of the statute now before us, we are unconvinced that we should renounce the settled law of Texas that the legislature may not delegate its powers without providing some criteria or safeguards.
>
> [*Id.*]

The court went on to hold, "[w]e have, in this case, no standard or criteria either by statute or rule which affords safeguards for the affected parties." *Id.* at 928.

Plaintiffs assert that the *Texas Antiquities* case is applicable to the present case because both cases deal with an historic district and the regulation of properties by an historic committee. Plaintiffs argue that this court should find, as the court in *Texas Antiquities* found, that the Ordinance is unconstitutionally vague. This court disagrees. In the *Texas Antiquities* case, it was not argued, nor did the court find, that there were any standards or criteria, whereas in the case at bar, this court finds there are sufficient standards and criteria to safeguard the parties. *See infra* pp. 559–63, 688 A.2d pp. 677–79.

Defendants cite to *A–S–P Associates v. City of Raleigh,* 298 *N.C.* 207, 258 *S.E.*2d 444 (1979), in support of their assertion that the ordinance is constitutional. This court finds *A–S–P* persuasive authority for the present case.

In *A–S–P,* a landowner challenged on constitutional and statutory grounds the city's ordinance which created an historic overlay

district. The standard to be used by the historic commission in granting or denying applications for Certificates of Appropriateness within the district provided:

> "The commission shall not consider interior arrangement and shall take no action under this section except for the purpose of preventing the construction, reconstruction, alteration, restoration, or moving of buildings, structures, appurtenant fixtures, or outdoor advertising[ ] signs in the historic district *[w]hich would be incongruous with the historic aspects of the district."*
>
> [*Id.* 258 *S.E.*2d at 452 (emphasis added) ]

The *A–S–P* court, in determining the sufficiency of the standard, defined the standard of incongruity as a contextual standard, "one which derives its meaning from the objectively determinable, interrelated conditions and characteristics of the subject to which the standard is to be applied." *Id.* at 454 (citing Turnbull, *Aesthetic Zoning*, 7 *Wake Forest L.Rev.* 230, 242 (1971)). The court went on to state:

> the standard of "incongruity" must derive its meaning, if any, from the total physical environment of the Historic District. That is to say, the conditions and characteristics of the Historic District's physical environment must be sufficiently distinctive and identifiable to provide reasonable guidance to the Historic District Commission in applying the "incongruity" standard.
>
> [*Id.* at 454]

Although the court did find the architectural style within the historic district to be to an extent an architectural melange, it also found the predominant architectural style readily identifiable as Victorian and, thus, not such as to render the standard of incongruity meaningless. *Id.* at 453–54. The court went on to hold that "[t]he architectural guidelines and design standards incorporated into the ... Ordinance ... provide an analysis of the structural elements of the different styles and provide additional support for our conclusion that the contextual standard of 'incongruity' is a sufficient limitation on the Historic District Commission's discretion." *Id.* at 454.

In rendering its decision, the *A–S–P* court noted that the makeup of the Commission and the procedural safeguards also helped limit the discretion of the Commission. The ordinance required that a majority of the members of the Historic District

Commission shall have demonstrated special interest, experience, or education in history or architecture. The ordinance further provided for procedural safeguards as an additional check on potential abuse of the Commission. First, there was a provision for appeal to the Board of Adjustment from an adverse decision of the Commission. Second, there was a provision which afforded the property owner a right to appeal a decision of the Board of Adjustment to the Superior Court. *Id.* at 454–55.

■ In this case, plaintiffs have facially challenged section 805.2 of the ordinance which sets forth a standard of "incongruity" similar to the one found in *A–S–P*. The Short Hills Park Historic District is similar to the historic district in *A–S–P* in that the Short Hills Park Historic District is also to some extent an architectural melange. However, the heterogeneity of architectural style for non-designated properties in the Short Hills Park Historic District is not such as to render the standard of "incongruity" meaningless. The predominant architectural style for non-designated properties in the district is "Colonial" or "Colonial Revival," the characteristics of which are readily identifiable. In fact, according to the Short Hills Park Historic District National Register of Historic Places Inventory Nomination Form, in excess of ninety percent of the non-designated properties within the district are either "Colonial" or "Colonial Revival." *See National Register of Historic Places Nomination Form for the Short Hills Park Historic District in Millburn, New Jersey* at 15–23 (1980).

Although it may be difficult to capture the atmosphere of an historic district through an ordinance, other sources outside an ordinance are available to guide the Commission. *See Maher v. City of New Orleans*, 516 *F*.2d 1051, 1063 (5th Cir.1975). In this case, the Commission has the benefit of a comprehensive survey of the historic architecture in Millburn. The two year survey, which was funded by a State grant, employed the services of a consulting firm and over 130 local volunteers. The survey results were used to help the Short Hills Park Historic District gain nomination to the State and National Register of Historic Places. Other sources

which help define the characteristics of the district include photographs and writings. This court finds the characteristics of the Short Hills Park Historic District's physical environment to be sufficiently distinctive to lend reasonable guidance to the Commission in applying the ordinance's standard of "incongruity."

In addition, the ordinance includes and is surrounded by criteria which supplement the adequacy of the standards. First, the Millburn Township Historic Preservation Design Guidelines provide the essential design characteristics of the building. The Commission and applicants can use the guidelines to determine which design characteristics and elements are essential to preserve and/or recapture the qualities that make a building distinctive and, when taken as a whole, contribute to the unique character of the district. *See Design Guidelines for Historic Districts and Sites, Millburn Township Historic Preservation Commission; see also A–S–P Assocs., supra,* 258 *S.E.*2d at 454 ("[t]he architectural guidelines and design standards incorporated into the Oakwood ordinance (described in note 4, *supra*) provide an analysis of the structural elements of the different styles and provide additional support for our conclusion that the contextual standard of 'incongruity' is a sufficient limitation on the Historic District Commission's discretion.")

Second, the ordinance limits the Commission's discretion by requiring members of the Commission to be "knowledgeable in building design and construction or architectural history ... [and] knowledgeable of, or who [have] a demonstrated interest in, local history....". *Township of Millburn, Ordinances* art. 8, § 803(A)(1)(a)–(b); *see A–S–P Assocs., supra,* 258 *S.E.*2d at 453–54 (citation omitted) (" 'When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adopt the legisla-

tive goals to varying circumstances.' "); *Maher v. City of New Orleans,* 516 *F.*2d 1051, 1062 (5th Cir.1975) (footnote omitted) ("Another method by which the lawmaking body curbed the possibility for abuse by the Commission was by specifying the composition of that body and its manner of selection. Thus, the City is assured that the Commission includes architects, historians and business persons offering complimentary skills, experience and interests.").

Next, the ordinance allows for an appeal process which provides an additional limitation on the discretion of the Commission. *Township of Millburn, Ordinances* art. 8, § 809(C); *see Maher, supra,* 516 *F.*2d at 1062–63 ("The elaborate decision-making and appeal process set forth in the ordinance creates another structural check on any potential for arbitrariness that might exist."); *A–S–P Assocs., supra,* 258 *S.E.*2d at 454 (citation omitted) (" '[T]he presence or absence of procedural safeguards is relevant to the broader question of whether a delegation of authority is accompanied by adequate guiding standards.' ")

Finally, the Ordinance provides for an informal review process. *Township of Millburn, Ordinances,* art. 8, § 807. This allows an applicant the opportunity to present a proposal for informal review and comment by the Commission so that an applicant can determine compliance with the standards of the ordinance and obtain suggestions for modifications.

## II. CONCLUSION

■ To declare a statute unconstitutional is a judicial power which must be exercised delicately. This power should be exercised only when the legislation's repugnance to the constitution is clearly beyond a reasonable doubt.

[*State in Interest of J.G.,* 289 *N.J.Super.* 575, 582, 674 *A.*2d 625 (App.Div.1996) (citations omitted) ]

'[T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices....'

[*Miller v. California,* 413 *U.S.* 15, 28 n. 10, 93 *S.Ct.* 2607, 2617 n. 10, 37 *L.Ed.*2d 419, 433 n. 10 (1973) (citation omitted) ]

■ "Not all statutes need attain the same level of definitional clarity under the vagueness doctrine." *Cameron, supra*, 100 *N.J.* at 592, 498 *A.*2d 1217.

[T]he level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its strictures, the nature of the punishment that is authorized, and, finally, the potential impact of the statute upon activities and interests that are constitutionally protected.

[*Id.* at 594, 498 *A.*2d 1217]

Given the context and the purpose of the ordinance at issue, this court finds the ordinance's design criteria and guidelines sufficiently intelligible to provide adequate notice as to what is lawful. Plaintiffs' motion to invalidate section 805.2 of the ordinance is denied and defendants' cross-motion for summary judgment dismissing the complaint with prejudice is granted.